## 38627. WILLIAMS v. THE STATE.

GREGORY, Justice.

Appellant was convicted of murder and sentenced to life imprisonment for the stabbing death of James Thomas (Jake) Allen.

Prior to his death, Jake Allen lived with Evelyn Walker, appellant's daughter. On the night of his death, Jake and Evelyn became involved in a domestic quarrel. During the quarrel, Evelyn shouted to her mother (appellant), who lived in a nearby apartment, to come over and calm the dispute. Appellant went to the apartment, then the three of them went back across the courtyard to appellant's apartment. Appellant stabbed Allen in the chest with a knife while he was on her porch, and Allen died as a result of this wound.

Appellant introduced no evidence at trial, and she did not testify. The police officers who initially investigated the incident testified that when they arrived at appellant's apartment, they observed the deceased lying on the front porch covered with blood, with a stab wound in his chest. Upon entering the apartment, they found appellant, who stated to them, "I stabbed him, and I meant to do it." Appellant also told the officers that the weapon she used was in her kitchen. The officers found a butcher knife with blood on it in the kitchen. Subsequent tests by the Georgia State Crime Lab showed that the blood on the knife was similar to the blood of the victim.

That same evening, appellant made the following statement to

the police detective who interviewed her: "Jake and Evelyn was at Jake's arguing. Evelyn said Ma, tell Jake to leave me alone. I went over there. Evelyn had a knife. I took the knife away from Evelyn. Evelyn went to my kitchen and got another knife and went onto the porch where Jake was. Evelyn came back inside and said Jake's fell on the porch."

Two days later, appellant made this statement to the police: "I don't remember what I told you Sunday, but this I'm telling you now is what happened. Evelyn and Jake were arguing over at Jake's apartment. It was my apartment but I was letting Jake and Evelyn stay there. Evelyn raised up her window and called me to come over and stop Jake, to tell Jake to leave her alone. I went over there. I told her and Jake to quit. Evelyn had the knife in her hand. I told her, I said Evelyn come go home with me. Jake started cussing me, calling me all kind of names. Me and Evelyn went across to my apartment. Jake followed us, still cussing. I had gotten the knife away from Evelyn. When we got to the step at my porch, Jake slapped me twice. I took the knife and went to swing at him one time, I think. We were on the porch then. I went on in the house, me and Evelyn. He tried to come in but I shut the door. He called for Evelyn to come on to go. Evelyn went out and then came back. In a little while, she went back out and came back hollering Jake's been cut. I said Jake's just drunk. I went out and saw Jake lying there. I told Bo-peep to go call an ambulance. Evelyn couldn't have cut him because I had taken the knife, so I must have done it, but I didn't mean to."

A neighbor of appellant's who had learned of the stabbing incident and had arrived at appellant's apartment before the police arrived also testified. When he arrived at the apartment, he observed Jake lying on the floor of the porch with Evelyn holding Jake's arm. Evelyn was telling appellant to "leave him alone. Can't you see you've already hurt him." He observed appellant kicking Jake and hitting him with the screen door. He also testified that at this time appellant said to Evelyn, ". . . get him up. Get [him] up off my porch. I told him about [bothering] me. I told him I was going to get him at this time."

The county coroner testified that the stab wound to the chest penetrated the heart and was the probable cause of death. He also testified that the deceased had small cuts on his hands and a cut on the back of his shoulder. Blood samples of the victim showed an alcohol content of .31 grams per c.c. of blood. Testimony was given that such a high alcohol content indicated that the deceased was intoxicated nearly to the point of passing out before he was killed.

1. Appellant's first three enumerations of error involve essentially the same question, that is whether the evidence was sufficient for a rational trier of fact to have found appellant guilty of

murder beyond a reasonable doubt.

Appellant argues that this case is controlled by the following principle set forth in *Harrell v. State,* 108 Ga. App. 295, 296 (132 SE2d 787) (1963): "Where the State relies upon extra-judicial statements of the accused alone to show intent to commit the crime charged and no other evidence is introduced to show such intent, and where the alleged confession of the defendant and his sworn testimony on the trial, considered together, amount to no more than the admission of the main fact (that is, the killing of the deceased) with the qualifying exclusion of the necessary ingredient of intent, and where there was nothing in the proofs submitted by the State which materially contradicted the defendant's account of what occurred, even though the defendant's admission and his testimony may seem unreasonable, where it is the only explanation the State is able to offer, it is insufficient to sustain a conviction."

The facts of this case are not, however, on point with *Harrell,* supra. Here, at least one of the conflicting extra-judicial statements made by the accused and the testimony of another State's witness provide the ingredient of intent necessary to convict the accused. The first statement that appellant made to the police was, "I stabbed him and I meant to do it." Before this statement, appellant was seen kicking the deceased and hitting him with her screen door as he lay dying on her front porch. The neighbor who saw this also overheard appellant tell her daughter, "Get [him] off my porch. I told him about [bothering] me. I told him I was going to get him at this time." This evidence, if believed by the jury, was sufficient to establish the intent necessary to support a murder conviction.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found Williams guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant argues that the trial court erred in charging the jury on Code Ann. § 26-902 (b)(1) because there was no evidence to support the claim.

In his instructions to the jury, the trial judge charged on Code Ann. § 26-902 (a), use of force in defense of self or others, including justifiable homicide. Following this, the judge also charged Code Ann. § 26-902 (b)(1) as follows: "Now subsection b of this same code section also provides that: 'A person is not justified in using force under the circumstances specified in paragraph a of this section if he initially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant."

We find that the charge on Code Ann. § 26-902(b)(1) was supported by the evidence in the case. Appellant's neighbor testified

that he overheard appellant say, "I told him about [bothering] me. I told him I was going to get him at this time." Appellant's statement to the police showed that she went to the victim's apartment at her daughter's request during a confrontation between the victim and appellant's daughter. From this, the jury could reasonably infer that appellant interjected herself into the controversy and provoked the incident which followed. Under these facts, it was not error to instruct the jury on this exception to the law of justifiable homicide.

3. We deal here with appellant's enumerations of error Nos. 5, 6, and 15. Appellant argues here that the trial judge's charge and recharge to the jury improperly limited the issues to murder and voluntary manslaughter, excluding the possibility of justifiable homicide.

As we noted in Division 2, the trial judge did instruct the jury on the law of justifiable homicide. Appellant's complaints are that the trial judge failed to mention justifiable homicide in the conclusion to his initial charge, he failed to recharge on justifiable homicide when the jury requested and received a recharge on the law of murder and voluntary manslaughter, and his charge on justifiable homicide was improper.

Appellant argues that the specific charge on justifiable homicide given by the trial judge was error under Code Ann. § 81-1104 because it amounted to an expression of the judge's opinion on the weight of the evidence and the applicability of that defense. Appellant states in his brief that the trial court prefaced the charge on justifiable homicide with this comment: "The evidence may suggest the issue of justification by self-defense." After looking at the record, however, we find that the complained of portion of the charge actually reads: "*I charge you that where* the evidence may suggest the issue of justification by self-defense . . ." While we believe the first statement could amount to an expression of the trial judge's opinion on the weight of the evidence, we believe that the statement actually spoken to the jury was a correct abstract statement and a proper way to begin a charge on justifiable homicide. By these words, the trial court made an abstract statement of law, but did not comment on the evidence before the court.

It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. *Felts v. State,* 244 Ga. 503, 504 (260 SE2d 887) (1979); *Oliver v. State,* 239 Ga. 571, 572 (238 SE2d 346) (1977); *Spencer v. State,* 231 Ga. 705 (203 SE2d 856) (1974). We find that the specific charge given by the trial judge on justifiable homicide was correct. We have reviewed the court's charge as a whole and find that it was a full and fair charge covering all issues to be resolved by the

jury, including justifiable homicide. These enumerations of error are without merit.

4. Appellant further argues that the trial court erred in failing to charge the jury on the defense of misfortune or accident under Code Ann. § 26-602. Appellant alleges that the following portion of one of appellant's statements to the police raised the issue of misfortune or accident: "When we got to the step at my porch Jake slapped me twice. I took the knife and went to swing at him, one time I think. . . . Evelyn couldn't have cut him because I had taken the knife. So I must have done it, but I didn't mean to."

The defendant presented no evidence at trial. The evidence presented by the State showed that at least three witnesses heard appellant say that she had stabbed the victim and that she had meant to do it. The coroner testified that the victim suffered numerous cuts, including at least two very severe stab wounds. An objective review of the various statements made by appellant to the police shows that her explanation for the stabbing was based upon justification or self-defense. A neighbor testified that following the stabbing, appellant kicked and cursed the victim's dead body. There was no evidence of accident or misfortune presented. It was not error for the trial judge to refuse to charge Code Ann. § 26-602. *Boling v. State,* 244 Ga. 825, 829 (262 SE2d 123) (1979).

5. Appellant alleges that it was error for the trial court to fail to charge on involuntary manslaughter under Code Ann. § 26-1103(b) where the evidence authorized such a charge. Pretermitting the question of whether or not a charge on involuntary manslaughter was appropriate under the facts of this case, it was not error to fail to charge on involuntary manslaughter as there was no prior request to charge on this matter. *Gilliam v. State,* 245 Ga. 708, 710 (267 SE2d 8) (1980); *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976).

6. Finally, appellant argues that the trial court erred when it failed to instruct the jury that the failure of the defendant to testify should create no presumption against her, and that no comment should be made because of such failure under Code Ann. § 38-415. It is not error to fail to charge on the failure of a defendant to testify absent a request for such a charge. *Burger v. State,* 245 Ga. 458, 459 (265 SE2d 796) (1980); *Woodard v. State,* 234 Ga. 901, 903-06 (218 SE2d 629) (1975).

7. All remaining enumerations of error were expressly abandoned by appellant in his brief.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 8, 1982 —
REHEARING DENIED SEPTEMBER 23, 1982.

*Jones, Jones & Hilburn, Paul J. Jones, Jr.,* for appellant.
*Beverly B. Hayes, District Attorney, William T. McBroom, Assistant District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.