71098. JOHNSON v. WILLS MEMORIAL HOSPITAL
& NURSING HOME.
(343 SE2d 700)

BENHAM, Judge.

Appellant Johnson filed a wrongful death suit against appellee following the death of appellant's husband, a patient at the hospital. This appeal is from a judgment entered in favor of appellee hospital after the jury returned a defendant's verdict.

1. On appeal, appellant questions the trial court's denial of her motion for new trial, which was grounded on the assertion that the evidence was insufficient to authorize a verdict for the hospital. See OCGA § 5-5-21. "After the verdict of a jury has been returned the evidence is construed most favorably to the prevailing party as every presumption and inference is in favor of the verdict. [Cits.]" *Hill Aircraft &c. Corp. v. Tyler*, 161 Ga. App. 267 (1) (291 SE2d 6) (1982). A review of the trial transcript with this standard in mind reveals that appellant's decedent, Columbus Johnson, was admitted to appellee hospital on January 2, 1979, complaining of stomach pains and weakness. Various tests were run, with results within normal range. The decedent was given fluids intravenously to treat dehydration. At 11:00 p.m. on January 4, appellant's decedent left his room and, pushing the stand upon which his intravenous fluids were suspended and swinging a water pitcher, ran down the hospital corridor toward the hospital exit, yelling, "Help me." Two sheriff deputies who were at

the hospital on another matter stopped Mr. Johnson's flight and returned him to his room, despite his resistance. The supervising nurse called Mr. Johnson's physician, who ordered an injection of sodium amytal to sedate the patient. A nurse attempted to give the medication to the patient through the intravenous apparatus, but due to the patient's thrashing about, most of the sodium amytal was injected subcutaneously rather than intravenously. At 11:30 p.m., the patient was standing in the doorway of his room, "very agitated." Near midnight he was seen walking in his room, calmer and speaking coherently. An orderly was stationed in the corridor to ensure that the patient remained in his room. Another nurse looked in on Mr. Johnson at 12:00 a.m. and saw him lying on his bed, fully clothed. At 2:40 a.m., the orderly reported that Mr. Johnson's room was empty and that the window was open and the screen cut. He was found approximately 8-1/2 hours later in the yard of a nearby residence and returned to the hospital, where he was pronounced dead on arrival. His treating physician diagnosed the cause of death as overexposure to cold, but no autopsy was conducted.

At trial, appellant attempted to show that the hospital, acting through its personnel, had breached its duty of care by failing to fully inform the treating physician of the patient's condition and by failing to treat the patient as the physician had directed. Appellant also alleged that the hospital had breached its duty by failing to monitor and protect Mr. Johnson. Appellant presented an expert witness who opined that the nursing personnel failed to adequately communicate with the treating physician and that the failure to communicate violated the general nursing standard of care. However, two physicians, qualified as expert witnesses for appellee, were of the opinion that the nursing and hospital care rendered Mr. Johnson was in accordance with the standard of hospital care administered to patients in the area and in accordance with generally recognized nursing care. Since "it cannot be said that the verdict of the jury was contrary to the evidence and without evidence to support it" (*Hill Aircraft,* supra), we cannot say that the trial court erred in denying appellant's motion for new trial.

2. Appellant next contends that the trial court gave the jury an inappropriate charge on the standard of care required of appellee. The questioned instruction was taken from *Smith v. Hosp. Auth. of Terrell County,* 161 Ga. App. 657 (1) (288 SE2d 715) (1982); and *Emory Univ. v. Porter,* 103 Ga. App. 752 (1) (120 SE2d 668) (1961), and informed the jury that the standard of care applicable to appellee hospital was that standard of care exercised in similar hospitals in similar communities. Citing *Wade v. Archbold Memorial Hosp.,* 252 Ga. 118 (311 SE2d 836) (1984), appellant contends it was error to apply the "locality rule" to this case.

The "locality rule" is appropriate in a case in which the adequacy of a hospital's facilities or services is questioned. See *Wade*, supra; *Smith*, supra; *Emory Univ. v. Porter*, supra. Inroads on the "local" standard of care rule have been made in cases in which a plaintiff asserts negligence in the medical care and treatment provided by a hospital's professional personnel. See *Wade*, supra; *Murphy v. Little*, 112 Ga. App. 517 (2) (145 SE2d 760) (1965). In the case at bar, appellant alleged in her complaint that the nursing care her late husband received was substandard and that appellee's facilities were deficient since it had failed to protect her decedent adequately. The protection of patients is not a medical function of a hospital; rather, it is a service provided by a hospital to its patients, and the ability of a small rural hospital to provide such a service is limited by its location and resources. See *Wade*, supra. In light of the pleadings, a charge on the locality rule was called for, and the trial court committed no error in so instructing the jury.

3. Lastly, appellant claims error was committed when the trial court granted appellee's motion in limine, prohibiting appellant from cross-examining one of appellee's expert witnesses as to whether he had ever been a defendant in or the subject of a medical malpractice action. Appellant maintains that evidence of an expert witness' prior involvement in medical malpractice claims is relevant and material to show bias and prejudice.

When the trial court granted appellee's motion, appellant made no proffer of evidence to enter into the record the testimony the trial court's ruling had curtailed. Compare *Smith v. Greene*, 144 Ga. App. 739 (2) (242 SE2d 312) (1978). While the lack of such a showing does not preclude review of the trial court's decision since the "offer of proof" rule does not apply to the cross-examination of a witness (*Cambron v. Canal Ins. Co.*, 246 Ga. 147 (10) (269 SE2d 426) (1980)), we are unwilling to state unequivocally that an expert witness' involvement as a defendant in unrelated malpractice cases is relevant to the case in which the expert is testifying. The weakness of such a rule is very evident in the present case: the issue with which the witness was concerned involved whether the nursing care the decedent received was substandard and resulted in his death. It is not likely that any case in which the expert (a physician who had taught several nursing classes) had been alleged negligent would have hinged on whether the physician had given the plaintiff/patient the proper nursing care. We cannot say that the trial court's decision to prohibit the line of questioning at issue was an abuse of the discretion it may exercise concerning the scope of cross-examination and the relevancy of evidence.

*Judgment affirmed. Banke, C. J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED JANUARY 22, 1986 —
REHEARING DENIED APRIL 1, 1986 — ▇▇▇▇▇▇▇

*David E. Ralston*, for appellant.
*Gary B. Blasingame*, for appellee.