A89A0534. CLEMONS et al. v. ATLANTA NEUROLOGICAL INSTITUTE, P.C.
(384 SE2d 881)

Beasley, Judge.

Mr. and Mrs. Clemons sued Atlanta Neurological Institute, P.C., alleging that Mr. Clemons sustained injuries due to the negligence of the doctor, its agent, in failing to protect Mr. Clemons from falling during a cervical myelogram. The Institute denied the material allegations, and the jury found in its favor. A motion for new trial was denied, and this appeal followed.

1. Plaintiffs contend the court erred in giving defendant's fourth request to charge.

(a) Appellee makes the threshold assertion that plaintiffs waived objection made during the charge conference by not excepting to the charge after the jury was instructed.

We are not fully persuaded that it was not waived. OCGA § 5-5-24 (a); Sims v. Johnson, 185 Ga. App. 720, 721 (365 SE2d 532) (1988); Hurst v. J. P. Colley Contractors, 167 Ga. App. 56, 57 (2) (306 SE2d 54) (1983).

Moreover, the nature of the objection raised here is not entirely the same as that made at the charge conference. "[T]he specific grounds for objection to a charge control the extent of the appellate review of the charge." Hurst, supra at 58. The complaint made here is that the charge allowed a lesser standard of care to be applied than the law requires, and that if abstractly correct, it was not adjusted to the evidence. The objection during the charge conference was only that it spoke of an unintended result and the myelogram did produce its intended result, that is, x-rays. This refers only to the latter ground; the former was not raised below.

Nevertheless, we will address the merits, because the trial court stated after the jury charge that he incorporated by reference the conference objections and rulings, and after recharge again took blanket note of the previous "exceptions." By its "incorporation" statement, made unsolicited at a time when an invitation to state exceptions should have been extended, the court implied that it assumed the

parties would raise exceptions similar to the objections voiced during charge conference, and further that it rejected them. Thus the court created an awkward situation for which the party ought not be penalized by our refusal to address the substantive claim of error.

However, the procedure followed by the trial judge is not approved, because " '[o]ne purpose of [requiring a party to reassert his objections to a given charge] is to afford the trial judge an opportunity to correct any errors in his instructions without the necessity of an appeal.' *Fleet Transport Co. v. Cooper*, 126 Ga. App. 360, 361 (190 SE2d 629)." *Hurst*, supra at 58. Reflection after the charge is given allows reconsideration in a different context and also serves to articulate plainly the legal points and rulings which are later to be reviewed.

This case is distinguishable from *Hurst* in that there is a full record of the preinstruction charge conference and we are able to review plaintiffs' specific objection.

(b) The charge at issue is that "[a] doctor is not an insurer and an unintended result does not raise even an inference of negligence." The law does not require a retrial on account of this one sentence found in the instructions to the jury at the end of this six-day trial.

The doctor, defendant's agent, testified on cross-examination during plaintiffs' case-in-chief that Frank Clemons fainted and slumped to the floor during a myelogram procedure which the doctor was conducting. The table on which Clemons was lying with the 3½-inch needle inserted in his back pointing towards his feet had been slowly tilted vertically to allow the dye to run down into the sac. This was done because the dye had not dispersed while the table was at a 45-degree angle for some minutes. The table had a 6"-wide flat platform at the foot, and the patient, who was facing the table, was uncomfortable since he could not get his foot on the platform. The doctor permitted him to step back off the platform, as he indicated he wanted to do so, and lean against the table, remaining vertical. It is essential that he be comfortable during the procedure. It does not matter whether the patient stands on the platform or on the floor.

At least one technician was at his side, holding his arm. There may have been one on his other side, too. The doctor stepped back to look at the x-ray screen and was observing it when he heard a noise. He turned around and saw the patient slumped sideways, in the arms of one technician, who was then kneeling. Another technician was also kneeling over the patient, who had fainted after about two minutes of standing.

When he saw that the patient had fainted, the doctor was frightened because fainting is serious as it could indicate a heart attack or severe blood pressure. The doctor immediately pulled the needle out altogether and the three got the patient back lying flat on the table,

where the doctor shook him and he regained consciousness after about four or five seconds. While the patient was standing and before he fainted, the doctor had twice asked him if he felt well, and the patient had both times said he did and nodded "yes." The doctor looked at him each time and observed that he looked perfectly alert and in good control of his faculties.

The doctor testified that he had done close to 3,000 myelograms and that of these, three patients had fainted, Mr. Clemons being the second.

In its charge to the jury, the court fully and clearly instructed the jury on the duty of a medical practitioner, the standard of care required, and how it was to be measured. It instructed them how to apply the standard and reach a verdict as to liability or the absence of the same. It instructed that the standard is presumed to have been met but is rebuttable. It instructed that a rebuttable presumption is "merely a circumstantial inference selected by the law as the most reasonable . . . rational hypothesis . . . ." It explained how presumptions are to be employed.

The allegedly offensive instruction is found in the above-described context, following the sentence first quoted:

"Ladies and gentlemen of the jury, I charge you that it is the general rule in this state that laymen, even jurors and courts, are not permitted to say what is proper medical and surgical treatment, for that is a medical question. A doctor is not an insurer and an unintended result does not raise even an inference of negligence."

This last sentence cannot be examined in isolation. "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. [Cits.]" *Williams v. State*, 249 Ga. 822, 825 (3) (295 SE2d 293) (1982). "It is well settled that the mere fact that the trial judge interjects into his charge some statement inapplicable to the issues of the case does not always require a reversal. Where such an instruction has been given, the reviewing court looks to the whole record to see if the complaining party in fact suffered prejudice. If so, a new trial will result; otherwise not." *Bonita Theatre v. Bridges*, 31 Ga. App. 798, 806 (122 SE 255) (1924), applied in *Blount v. Moore*, 159 Ga. App. 80, 82-83 (1) (282 SE2d 720) (1981).

Even when due process in the trial of a criminal case is at stake, as perceived under the Federal Constitution, the challenger would have to show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U. S. 141, 147 (94 SC 396, 400, 38 LE2d 368) (1973)[1];

---

[1] "[A] judgment . . . is commonly the culmination of a trial which includes testimony of

*Francis v. Franklin,* 471 U. S. 307, 315 (105 SC 1965, 85 LE2d 344, 354) (1985). Considering the charge as a whole, the issues, and the evidence, the recitation of the latter sentence is not reversible error even if error. OCGA § 9-11-61. As Justice Bleckley graphically expressed the realistic principle in *Cherry v. Davis,* 59 Ga. 454, 457 (1877), as related to the jury charge: "Wrong directions which do not put the traveler out of his way, furnish no reason for repeating the journey."

The issue as to liability was whether the doctor failed to exercise due care, skill, and diligence in conducting the procedure so that the patient's slump or collapse toward the floor, which resulted in partial dislodging of the needle and subsequent injury, was proximately caused thereby. From the evidence, it would be obvious to a rational jury that dislodging the needle was not intended; it would be obvious that the patient's fainting or his slumping was not intended; it would be obvious that the medical complications which followed were not intended.

The court merely told the jury that the injuries allegedly resulting from the manner in which the doctor managed the patient's body during the medical procedure could not in themselves raise an inference of negligence, i.e., that an inference of negligence on the part of the doctor cannot be drawn simply from the fact that injury occurred during a medical procedure of which the doctor had charge. It was not in issue whether the doctor intended or did not intend these consequences of his allowing the patient to stand, leaning against the table and unstrapped to it, so the use of the word "unintended" in context would reasonably mean nothing more than "unexpected" or "unanticipated."

Thus the contentious portion of the targeted sentence is inconsequential. The use of the adjective could not have misled a reasonable jury with respect to the standard of care required of physicians and in particular, this physician, which standard of care had been carefully described to the jury. A reasonable jury would not construe the standard of care erroneously because of the contested charge, or construe the sentence to render askew the standard of care. That is the test to be employed in measuring the validity of contested charges. *Parks v. State,* 254 Ga. 403, 414 (12) (330 SE2d 686) (1985).

Appellant contends that the sentence does not state a correct principle of law but is only a gratuitous preface to an abstract principle of law. The first assertion is incorrect. *Hayes v. Brown,* 108 Ga.

---

witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment. . . ." *Cupp,* supra.

App. 360, 363 (1) (133 SE2d 102) (1963). See also *Landers v. Ga. Baptist Med. Center*, 175 Ga. App. 500, 501 (1) (333 SE2d 884) (1985).

Likewise the assertion that the sentence is confusing because not adjusted to the evidence is incorrect, based on the foregoing analysis. The principle that no inference of negligence is raised when injury occurs as a result of medical treatment applies as well when injury occurs during the course of a medical test procedure and the doctor is charged with negligence in regard to the manner he conducted the testing procedure. The practice of medicine is not limited to treatment. *Hayes, Landers*, and *Blount v. Moore*, supra, are treatment cases. This is a testing procedure case. The same lack of inference applies.

The court in *Blount* did not discuss or rule on the charge here at issue. The challenged charge there was: " '[T]he law recognizes that medicine is an inexact science at best and that all a doctor may do is assist nature in accordance with the present state of medical experience.' " *Blount*, supra at 81. The sentence from *Hayes* which is challenged here preceded the sentence challenged there, with another sentence in between. The quoted sentence is what the court in *Hayes* regarded as "a gratuitous preface to the rule that no inference of malpractice may be drawn from unfavorable treatment." *Blount*, supra at 82. The instruction now spotlighted helps to communicate, although not as crisply as might have been, "the principle that a physician is judged by conduct and not by result." *Blount*, supra at 83.

It even appears that appellants did not regard the instruction as poisonous to the jury's deliberations. Assuming that they did not waive the objection, they did not convey to the trial court that they believed this charge was so damaging as to mislead or confuse the jury and cause reversible error all by itself. Otherwise they certainly would have raised this specifically, especially since it was the only part of the charge enumerated as error, and particularly when the court had a second opportunity to eliminate it after the jury asked for a recharge. Either they did not consider it significantly erroneous or they did not consider it significantly harmful. They could have urged that it be corrected on the recharge, having had an hour to reflect further on it before the jury asked for additional instructions.

The oral argument before this court and the appellants' supplemental brief both confirm this attitude, as all focus is on the remark-of-counsel enumeration, not the sentence in the charge.

2. At the beginning of trial the court directed counsel that "there will be no argument of fact on objections in the presence of the jury."

On the fourth day of trial, after the jurors were seated, counsel for defendant stated when the judge assumed the bench: "Before we get started, it has come to my attention over the evening recess that a statement was made by one of the jurors that if she got the chance,

she was going to hang this doctor, and I would like for the Court to inquire into that and if that statement was made, I would move that the alternate juror be permitted to take her place."

On appeal, plaintiffs complain that the court erred by failing to give curative instructions to the jury as required by OCGA § 9-10-185, for what plaintiffs regard as a deliberate violation of the court's earlier admonition and a violation of the Code section as provided and as construed in appellate decisions.

After excusing the jury, the court inquired further into the matter raised and, as counsel for plaintiffs himself requested, called the juror in for examination. Based on what she said, the court concluded that it was her answers given during voir dire (in the presence of all jurors) which was referred to, not some out-of-court statement. The court queried her further to be sure she would be an impartial juror despite her voir dire answers indicating predisposition against doctors. Having been satisfied, the court sent her back to the jury room with the instruction not to discuss the content of the inquiry with the other jurors.

After further discussion with counsel during which plaintiffs registered no complaint about the court's handling of the matter, the trial resumed after a short recess and plaintiffs called their next witness. After that witness' entire testimony and the lunch recess, plaintiffs asked the court to instruct the jury so as to remove any prejudice it might have against the juror because of the accusation which defendant's counsel had raised against her. Counsel acknowledged that he could not then articulate with any precision what he thought would be appropriate and he expressed satisfaction when the court invited him to submit a written request to charge at the charge conference to be held later. No such request was ever presented. Nor did counsel ever ask that defendant's counsel be rebuked for making the statement in the first place.

No reversible error is indicated. Even if we assume that the failure to give a curative instruction was not waived by plaintiffs' inaction, *Askins v. State*, 210 Ga. 532, 533 (81 SE2d 471) (1954), its absence does not manifest an abuse of discretion. *Hicks v. State*, 196 Ga. 671, 673-674 (2) (27 SE2d 307) (1943). Failing to affirmatively charge the jury, either when the incident occurred or in the final charge, that they were not to hold the accusation against their fellow juror against her in their deliberations or in any way consider her predisposed against defendant, did not contravene OCGA § 9-10-185 or the cases applying it. Its primary objective is to keep the jury from formulating a bias, specifically from being prejudiced by counsel remarks. This relates to the courts' duty to assure a fair trial and in its first instance is focused on the court's acting to keep the jury impartial.

Appellants complain that the court failed to sanitize the jury, but the court's election to leave well enough alone in the absence of a carefully and clearly worded request to charge cannot be deemed in the circumstances to be contrary to law. We cannot say that the court was required as a matter of law to instruct the jurors that they should not question the impartiality of the one who was returned to their number after the inquiry occasioned by defense counsel's expression of concern. "Unless there is an abuse of discretion concerning the trial court's ruling on alleged improper juror conduct, the appellate court will not upset the trial judge's determination. [Cit.]" *Hart v. State,* 157 Ga. App. 716, 717 (1) (278 SE2d 419) (1981).

The court's general instructions to the jury specifically pointed out that any verdict returned had to be supported by the evidence produced upon the trial and that as honest, conscientious, fair and impartial jurors, it was to consider the case as instructed by the court. See, in connection with instructions, *Harper v. Ga. Southern &c. R. Co.,* 140 Ga. App. 802 (1) (232 SE2d (118) (1976). Although in that case even more explicit instructions were given concerning the singled-out juror, we are satisfied that the court's resolution of the problem in this case left the parties with a jury which was impartial in its deliberations.

3. The denial of the motion for new trial on the general grounds, OCGA §§ 5-5-20 and 5-5-21, was not error because the evidence supports the verdict. *Johnson v. Wills Mem. Hosp. &c. Home,* 178 Ga. App. 459 (343 SE2d 700) (1986).

*Judgment affirmed. Deen, P. J., Banke, P. J., Birdsong, Sognier, Pope and Benham, JJ., concur. Carley, C. J., and McMurray, P. J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent as I cannot concur in the majority's application of inapplicable malpractice standards to the case sub judice. *This is a case requiring the use of ordinary and reasonable care to protect the plaintiff husband from any known or reasonably apprehended danger which may be due to his condition.*

At the outset, I do not agree with the majority's position that plaintiffs waived any objection to defendant's fourth request to charge by failing to except to the charge after the jury was instructed.

During a charge conference, plaintiffs' counsel objected to defendant's fourth request to charge stating "again this speaks of an intended result, and here the myelogram procedure produced its intended result, which was in fact taking of x-rays [sic], production of x-rays [sic] that were in fact done." The trial judge rejected this exception and informed the parties that he intended to give defendant's fourth request to charge. Later, the trial judge did so charge the jury.

After the jury was charged, the trial judge addressed both plaintiffs' counsel and defendant's counsel as follows: "All right, gentlemen. Of course, we had our charge conference in some detail earlier this afternoon. *I incorporate by reference at this point all of your exceptions to the rulings of the Court at that time.* Are there any matters that we did not take up at that time that you would like to point out; that is, is there anything that I charged that I said I wouldn't charge, is there anything that I didn't charge that I said I would charge, is there anything that I said I would charge in a certain way that I didn't charge that way, and is there anything that I did charge that we didn't discuss that you except to. . . .?" (Emphasis supplied.) Plaintiffs' counsel did not except to the giving of defendant's fourth request to charge, but he did make an observation relating to the claims of plaintiffs being made separate if there was an award in favor of plaintiffs, prefaced by the following remark: "Your Honor, only thing we haven't addressed is . . . ." Plaintiffs' counsel had previously objected to defendant's fourth request to charge at the charge conference conducted by the trial court prior to the charging of the jury.

After a weekend recess, the jury returned to deliberate and asked the court the following question: "Could we the jury have a copy of the charges to the jury?" The trial judge responded by instructing the jury on all aspects of its previous charge, excluding only the charge on damages. After these instructions, the court inquired of counsel, *"Other than previous exceptions . . .* any others for the record?" (Emphasis supplied.) Plaintiffs' counsel did not make exceptions to the recharge of defendant's fourth request to charge which was previously objected to at the charge conference.

In *Sims v. Johnson,* 185 Ga. App. 720 (365 SE2d 532), this court held that " '[a]n objection to an instruction which is made during a charge conference, but which is not made or reiterated following the giving of the charge, fails to preserve the matter for review by an appellate court. The requirement is that there be a proper objection *after* the court instructed the jury and before the jury returned the verdict. (A)n objection made only at a charge conference is insufficient to preserve an issue for appeal . . . .' (Citations and punctuation omitted.) *Brown v. Sims,* 174 Ga. App. 243, 244 (329 SE2d 523) (1985); *Caudell v. Sargent,* 118 Ga. App. 405 (164 SE2d 148) (1968)." Id. at 720, 721. In the case sub judice, plaintiffs' counsel did not reiterate his charge conference objections after the jury was instructed. He failed to do so only upon the trial judge's direction ("Other than previous objections . . .") and after the trial judge incorporated all prior objections to the charges by reference. Nonetheless, defendant cites *Hurst v. J. P. Colley Contractors,* 167 Ga. App. 56, 57 (2) (306 SE2d 54), arguing that reference to an objection made during a preinstruc-

tion charge conference after the jury has been instructed is insufficient to preserve the record for appeal.

In *Hurst v. J. P. Colley Contractors,* supra, the appellants in that case made a general objection to the trial court's charge on the doctrine of "last clear chance." The colloquy that followed the objection demonstrated that the trial judge understood the appellants' complaint, but did not want to hear a more specific objection because the issue had been discussed during an off-the-record charge conference. On appeal, appellee argued that appellants' general objection was insufficient to preserve the issue for appeal. This court agreed and did not address the merits, reasoning that *the record is insufficient to determine* "whether the objections to the language of the instruction urged on appeal were brought to the attention of the trial court." *Hurst v. J. P. Colley Contractors,* 167 Ga. App. 56, 58 (2), 58, supra. The case sub judice is distinguishable from *Hurst v. J. P. Colley Contractors,* supra, *in that here we have a full record of the preinstruction charge conference and we are able to review plaintiffs' specific objection* to defendant's fourth request to charge. *From this perspective, I view the trial judge's instruction to counsel, in the case sub judice, not to reiterate any prior objections to the charge as an exception to the rule that counsel must reiterate all objections to the charge after the jury has been instructed.* To say otherwise, would penalize the complaining party for obeying the trial court's order.

Further, I do not subscribe to the majority's position that the trial court did not err in charging the jury that "[a] doctor is not an insurer and an unintended result does not raise even an inference of negligence."

Defendant's fourth request to charge appears to reflect the legal principle upon which is founded the rule of law that malpractice may not be inferred from an unfavorable result of a medical procedure. In *Blount v. Moore,* 159 Ga. App. 80 (1) (282 SE2d 720), a majority of this court characterized the language of a charge which reflected the same principle as argumentative, inappropriate and misleading and held that, while such a rule is appropriate to an appellate decision reviewing evidence in a malpractice case, it should not be included as a charge in a malpractice case. The majority in *Blount* reasoned that such a charge "could not possibly enlighten a jury of fact finders on the objective standard of care required of a physician." *Blount v. Moore,* 159 Ga. App. 80 (1), 82, supra. See *Jackson v. Rodriquez,* 173 Ga. App. 211, 213 (3) (325 SE2d 857); *Hyles v. Cockrill,* 169 Ga. App. 132, 133 (3) (312 SE2d 124); *Sullivan v. Henry,* 160 Ga. App. 791, 798 (1), 800, 801 (287 SE2d 652); and *Hawkins v. Greenberg,* 159 Ga. App. 302 (2), 309, 310 (283 SE2d 301). In the case sub judice, the language of defendant's fourth request to charge is not only susceptible to being misunderstood as imposing a lesser standard of care for physi-

cians, it is confusing because it is not adjusted to the evidence.

" 'A charge which is not applicable to the facts should not be given. *Collins v. Dixon*, 72 Ga. 475 (2) (1884).' *Todd v. State*, 149 Ga. App. 574, 575 (2) (254 SE2d 894)." *Studdard v. State*, 185 Ga. App. 319 (1), 320 (363 SE2d 837). In the case sub judice, *plaintiffs are not complaining of the result of the cervical myelogram procedure, they are complaining of an injury which allegedly occurred as a result of the doctor's (agent of the defendant) negligence in protecting Mr. Clemons from injury during the myelogram procedure.* In other words, defendant's fourth request to charge was a correct abstract principle of law which confused the real issue in the case sub judice, i.e., whether under the particular facts and circumstances the doctor (defendant's agent) *exercised ordinary and reasonable care in looking after Mr. Clemons while he was charged with Mr. Clemons' care.* See *Cobb County &c. Hosp. Auth. v. Crumbley*, 179 Ga. App. 896, 898 (348 SE2d 49). Since it is likely that the trial court's instruction misled and confused the jury with regard to the duty of care required of the doctor (defendant's agent) and since the charge was not adjusted to the evidence, it is my view that a new trial is required. Compare *Blount v. Moore*, 159 Ga. App. 80 (1), 83, supra.

In light of the above and the needed retrial, I find it unnecessary to express my views relating to plaintiffs' remaining enumerations. More particularly, it is unnecessary to address the error cited in plaintiffs' third enumeration, as the same would be unlikely to arise upon a retrial.

I am authorized to state that Chief Judge Carley joins in this dissent.

DECIDED JUNE 28, 1989 —
REHEARING DENIED JULY 20, 1989 —

*Simmons & Toliver, James C. Simmons, Jr., A. Leroy Toliver, Lynda G. Whitt*, for appellants.

*Downey, Cleveland & Parker, Lynn A. Downey, Russell B. Davis*, for appellee.

