A90A1901. MOSELEY v. COASTAL PLAINS GIN COMPANY, INC.
(404 SE2d 123)

SOGNIER, Chief Judge.

Coastal Plains Gin Company, Inc. brought suit against W. Grant Moseley, Sr., d/b/a Moseley & Associates seeking actual and punitive damages for Moseley's failure to procure requested insurance coverage. The jury returned a verdict in favor of Coastal Plains, and Moseley appeals.

Evidence was adduced at trial that when appellee came into existence and began construction in February 1985 on its ginning facilities, appellant approached appellee's president, Randy Dunn, told Dunn that he was an expert in the area of insuring cotton gin facilities, and solicited appellee's insurance business. Dunn testified that due to his own inexperience in the area, he decided in May 1985 to place appellee's insurance through appellant because of appellant's expertise. Dunn testified that among the many coverages he requested was a gin stock floater policy, which he stated encompassed cotton on the yard and baled cotton until deposited at a bonded warehouse, excluding only the period when the cotton was actually being processed in the gin. Appellee paid the premium requested by appellant, including an amount Dunn testified he thought represented a premium for the gin stock floater policy. Appellee's employees were instructed by appellant regarding maintenance of the extensive records needed for gin stock floater coverage. When appellee determined it would enter the module business (whereby cotton is packed on cotton wagons in the fields), Dunn testified he checked with appellant and was advised the gin stock floater policy also would insure appellee from any damage to the cotton in the field, and recalled appellant telling him that appellee was "covered like an umbrella." Appellant also inspected appellee's facilities, which were completed in September 1985, and gave advice to Dunn and others regarding the treatment of the cotton, at one point advising Dunn to keep the newly baled cotton out of the warehouse for 48 hours. Pursuant to appellant's instructions, the baled cotton was stored at the loading docks to the gin house. In November 1985 the gin house burned, along with

most of the baled cotton inside. Although the evidence conflicted whether appellee had received a binder from appellant indicating no gin stock floater policy had been purchased, it is uncontroverted that appellee did not receive the insurance policies themselves from appellant until after the fire, at which time appellee discovered appellant had not obtained the gin stock floater policy appellee had requested.

The major issues in this case were (1) whether appellant undertook to procure gin stock floater coverage for appellee; (2) if so, whether appellant was guilty of fraud or negligence in his performance of that undertaking; (3) and if so, whether appellee knew from viewing the binder or otherwise that the coverage had not been procured; (4) but if not, whether the policy appellant was to obtain pursuant to the terms agreed upon by the parties would have covered the loss suffered by appellee. It thus appears that appellant's expertise in the area of insurance for cotton gin facilities was relevant only in regard to the fourth issue because had appellee learned of the policies obtained by appellant it could have determined for itself the presence or absence of the gin stock floater policy and the limits of coverage under that policy. See *Greene v. Lilburn Ins. Agency*, 191 Ga. App. 829 (383 SE2d 194) (1989).

1. We find no error in the trial court's denial of appellant's motions for judgment notwithstanding the verdict and new trial.

(a) Appellant's main argument is that the policy the parties agreed appellant would procure would not have covered the loss for which appellee brought suit, so appellee failed to prove it was damaged by appellant's negligence. Appellant bases this argument on a standard industry gin stock floater policy and the terms of appellee's current policy, neither of which apparently would have covered the damage appellee sustained. However, the issue was not the extent of coverage appellee's requested gin stock floater policy might have provided had appellant obtained a standard industry policy, or whether appellee, upon receiving the nonexistent policy, would have realized the coverage did not apply to the cotton on the loading docks and perhaps requested additional coverage. Since it is uncontroverted that appellee never received any of its policies so that it could have determined for itself what a gin stock floater policy covered, the relevant coverage is not what is or may be provided in standard industry policies but rather what coverage appellee requested and appellant represented had been provided in the policy the parties agreed upon, which appellee never received.

"Where one undertakes to procure insurance for another and is guilty of negligence in his undertaking, he is liable for loss or damage to the limit of the agreed policy." (Citations and punctuation omitted.) *Ga. Farm &c. Ins. Co. v. Arnold*, 175 Ga. App. 850, 851 (1) (334 SE2d 733) (1985). Since there is some evidence that the policy the

parties agreed appellant would procure would have covered the loss sustained by appellee, the trial court did not err by denying appellant's motions for judgment n.o.v. and new trial. See generally *Milam v. Attaway*, 195 Ga. App. 496, 497-498 (1) (393 SE2d 753) (1990).

(b) In view of the testimony by appellee's employee, Norma Jean Warren, that the records detailing the cotton destroyed by the fire excluded the 47 bales of burnt cotton, which Warren testified was the only cotton appellee was able to salvage from the fire, we find no merit in appellant's argument that the trial court should have granted its motions because appellee failed to prove the after value of the damaged goods.

(c) We find no merit in appellant's arguments that the trial court erred by denying its motions as to the award of punitive damages and expenses of litigation. See *Speir Ins. Agency v. Lee*, 158 Ga. App. 512, 514 (3), (4) (281 SE2d 279) (1981).

2. Appellant contends the trial court erred by giving the jury appellee's requested charge, which provided that "should you find that [appellant] held himself out to [appellee] as an expert and highly skilled insurance adviser and further that he undertook to advise the insured who relied on such advice, he would be obligated to provide to [appellee] a higher standard of care that could reasonably be expected of someone possessing such expertise." We agree that the giving of this charge was reversible error.

First, even giving the jury credit for ordinary intelligence, see *Smaha v. Moore*, 193 Ga. App. 23, 24 (387 SE2d 13) (1989), we cannot agree with appellee that the average juror could possibly have interpreted "higher standard of care" to mean the higher "level of performance" appellee expected appellant to provide because of his alleged expertise. We note that the use of the "higher standard of care" language did not qualify as a verbal slip of the tongue since the record reveals that trial court's charge tracked the language in appellee's request to charge no. 7.

Second, the authorities cited by appellee in support of the giving of its charge reveal that the charge was not requested as a discussion of the performance level expected from an expert. Appellee cited *European Bakers v. Holman*, 177 Ga. App. 172, 175 (4) (338 SE2d 702) (1985) and the federal district court case discussed therein, which involve the standard of care to which an insurance expert is held, not the quality of service an insurance expert should provide. However, we do not agree with appellee that as to the standard of care of insurance agents representing themselves as experts, that anything in *European Bakers* supports giving of the above charge in the language employed.

In *European Bakers*, this court reversed the denial of a motion for directed verdict made by the client of an insurance agent and his

agency, on the basis that they were acting as the client's agent, thereby creating a fiduciary relationship between the parties. Id. at 174 (2). In the course of discussing other matters that would possibly recur upon retrial of the case, we disapproved an instruction which reflected an incomplete statement of the law as asserted in two foreign authorities. Id. at 175 (4). *European Bakers* did not change the well established law that "[t]he standard of ordinary and reasonable care is invariable, such care being that of every prudent man. [Cit.] But the care of a prudent man varies according to circumstances dependent upon the degree of danger. [Cits.] 'What is the precise legal intent of the term "ordinary care" must, in the nature of things, depend upon the circumstances of each individual case. It is a relative and not an absolute term.'" *Central R. &c. Co. v. Ryles*, 84 Ga. 420, 430 (11 SE 499) (1890). Consistent with the relative nature of ordinary care we have held that "[t]he law imposes upon persons of professional standing performing . . . skilled services, pursuant to their contracts made with their clients, an obligation to exercise a reasonable degree of care, skill and ability, such as is ordinarily exercised under similar conditions and like circumstances by persons employed in the same or similar professions. [Cits.]" *Mauldin v. Sheffer*, 113 Ga. App. 874, 880 (150 SE2d 150) (1966). We find the language relied upon by appellee in *European Bakers*, supra, to be a consistent, but incomplete, statement of the above law. Hence, while an agent who holds himself out as possessing expertise over and above that possessed by the average insurance agent may be held, relative to the nonexpert insurance agent, to a higher standard of care than the nonexpert, nonetheless the standard of care as to the expert is that of ordinary care employed by like experts. Indeed, rather than creating a higher standard of care for insurance experts, as the given charge seems to indicate, *European Bakers* actually was seeking only to add to the list of professionals and specialists who are held to the degree of care ordinarily exercised under similar conditions by other professionals in that area, such as those set forth in *Mauldin*, supra, those insurance agents who hold themselves out as possessing particular skill or expertise. See *Hardt v. Brink*, 192 FSupp. 879, 880-881 (W.D. Wash. 1961) and *Nowell v. Dawn-Leavitt Agency*, 617 P2d 1164, 1167 (Ariz. App. 1980), both cited in *European Bakers*, supra.

Although the trial court subsequently charged the jury on the standard of ordinary care, no instruction explaining the "higher standard of care" language in the contested charge was given so as to make that improper charge comply with the correct law, as discussed above. "When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless." (Citation and punctuation omitted.) *Hopkins v. First Union Bank*,

193 Ga. App. 109, 112 (2) (a) (387 SE2d 144) (1989). We hold that a reasonable jury may have construed the standard of care erroneously because of the contested charge or may have construed the sentence to render askew the standard of care set forth subsequently in the trial court's proper charge on that issue. Compare *Clemons v. Atlanta Neurological Institute*, 192 Ga. App. 399, 402 (384 SE2d 881) (1989). We therefore conclude the giving of this charge constituted reversible error.

3. Appellant enumerates error regarding the giving of three other charges.

(a) Our review of the evidence adduced at this trial reveals that all of appellant's actions, advice, and representations in issue in this case were undertaken by appellant for the purpose of obtaining or maintaining appellee's business, for which appellant expected compensation. We therefore agree with appellant there was no evidence to support the giving of a charge on gratuitous promise, and the giving of such a charge under the facts adduced at this trial was error. See generally *Don Swann Sales Corp. v. Edward*, 194 Ga. App. 807, 808 (2) (392 SE2d 29) (1990).

(b) Read and considered as a whole, see generally *Department of Transp. v. Hillside Motors*, 192 Ga. App. 637, 640 (3) (385 SE2d 746) (1989), we find no error in the trial court's charge on compensatory and punitive damages.

(c) As to the charge based on OCGA § 33-23-79, regarding an agent's treatment of premiums, we note that it is not reversible error to charge an entire Code section even though only a part of it may be applicable. *Kelley v. Foster*, 192 Ga. App. 95-96 (2) (383 SE2d 646) (1989). In view of the evidence regarding appellee's possible overpayment of premiums and appellant's failure to return the excess funds to appellee, we cannot say there was no evidence to support the giving of this charge. It is well settled that "an instruction is not inapplicable where there is any evidence, however slight, on which to predicate it. [Cit.]" *Ellis v. Dalton*, 194 Ga. App. 114 (1) (389 SE2d 797) (1989).

4. Appellant contends the trial court erred by failing to give three requested charges. Contrary to appellant's contention, the transcript reveals that the trial court did charge the jury on avoidance and comparative negligence and that the language it employed was substantially similar to that in appellant's requested charges. No error is therefore presented. See generally *Hornsby v. Phillips*, 190 Ga. App. 335, 341 (6) (378 SE2d 870) (1989). Because the evidence was undisputed that appellee never received any insurance policies prior to the fire, there was no evidence to support appellant's requested charge regarding the duty of an insured to read his policy. A requested charge need be given only when it embraces a correct and complete principle of the law and is pertinent and adjusted to the facts of the

case, see *Money v. Daniel*, 188 Ga. App. 215, 216 (1) (372 SE2d 305) (1988), and thus no error is presented. In view of the conflicting evidence on appellee's access to the insurance binder we note that the giving of a modified version of appellant's charge regarding such binders, as appellant admits in his brief the trial court charged the jury in this case, would be proper on retrial.

*Judgment reversed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 20, 1991 —
REHEARINGS DENIED MARCH 13, 1991 AND MARCH 15, 1991 —

*Dennis, Corry, Porter & Thornton, Robert E. Corry, Jr., William E. Gray II*, for appellant.

*Reinhardt, Whitley & Wilmot, Bob Reinhardt, Glenn Whitley*, for appellee.