A89A0819. McCURLEY et al. v. WHITAKER OIL COMPANY et al.

(388 SE2d 412)

BEASLEY, Judge.

Plaintiffs Mr. and Mrs. McCurley appeal the grants of summary judgment to defendant distributors, processors, and/or manufacturers, Whitaker Oil Company, Baychem, Inc., Imperial Chemical Industries, Ltd. (ICI PLC), ICI Americas, Inc. (ICIA), Occidental Electrochemicals Corporation, successor in interest of Diamond Shamrock Corporation, and Ashland Chemical Company, a Division of Ashland Oil, Inc., in this suit seeking to recover for McCurley's personal injuries and his wife's loss of consortium. This allegedly resulted from McCurley's being overcome by fumes from the chemical trichloroethylene (TCE), being rendered unconscious, and falling upon hot steam lines in his place of employment in the nail mill at Atlantic Steel Company. McCurley contended in his amended complaint that each defendant, although it knew or should have known of TCE's inherently dangerous nature, was negligent in failing to provide adequate warning of the chemical's hazards or to take proper measures to insure that information necessary to TCE's safe use was conveyed to

those who would be expected to use or be exposed to TCE; the TCE when sold was in a defective condition due to the lack of warning of its highly dangerous characteristics; each defendant showed a complete and reckless indifference to the consequences of its actions justifying an award of punitive damages.

The incident occurred on April 2, 1986, and suit was initially filed on June 18, 1987. Earlier, on October 6, 1986, the McCurleys filed a complaint for damages against employer Atlantic and several of its employees alleging that in an effort to avoid the expense of providing proper safety precautions for the hazardous exposure to TCE, defendants conspired to wilfully and intentionally conceal TCE's toxicity from becoming known to plaintiffs and other workers exposed to the chemical and that defendants fraudulently misrepresented that TCE was not toxic and posed no danger. Defendants were granted summary judgment.

All defendants in the present suit moved for summary judgment on the contention, *inter alia*, that McCurley knew of the TCE-related dangers and knowingly assumed the risk associated with inhaling TCE fumes. This was based largely on McCurley's statements in an affidavit filed in the prior suit against Atlantic, which affidavit plaintiffs stipulated could be received into evidence in this case.

Defendant Whitaker additionally presented evidence that it was not a manufacturer but a bulk distributor, entitling it to summary judgment on the strict liability claim, and that it had provided clear warnings to Atlantic about the hazards of TCE.

The trial court granted the motions. Appellants contend that in so doing, the court erred in construing the evidence most favorably toward the movants so that it erred in holding that no issue of material fact existed as to whether McCurley had equal or superior knowledge of the dangers inherent in TCE and as to whether he assumed the risk of the injury.

1. Although McCurley's claims are based on separate theories of recovery in negligence, strict liability, and recklessness, the underlying conduct complained of in each count is the alleged breach of a duty to warn.

" '[T]here is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known. . . . The same rule applies where it appears that the person using the product should know of the danger, or should in using the product discover the danger.' [Cits.]

"Whether a duty to warn exists thus depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. [Cit.]" *Giordano v. Ford Motor Co.*, 165 Ga. App. 644, 645 (2) (299 SE2d 897) (1983).

"This rule has manifested itself in the doctrine of assumption of

the risk, which stipulates that " 'if the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product he is barred from recovery.' [Cits.]" *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44, 45 (2) (248 SE2d 15) (1978). See *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95, 100 (5) (303 SE2d 284) (1983) (non-precedential). See also *Deere & Co. v. Brooks*, 250 Ga. 517 (299 SE2d 704) (1983).

The question is whether, construing the evidence in favor of appellants, it demonstrated without material factual dispute that McCurley was aware of the danger to him of working in the presence of the TCE fumes and nevertheless assumed the risk, precluding recovery as a matter of law.

McCurley made the following statements in his affidavit. McCurley had been employed by Atlantic for approximately nine years, a large portion of which he had worked in the nail mill. TCE was used in the nail mill as a degreasing agent. It was brought to Atlantic in tanker trucks, unloaded into tanks in the storage yard, and carried by pipeline to the degreasing machines in the nail mill. During his entire tenure with Atlantic, fumes from the TCE had caused a serious problem in and around the mill, resulting in constant complaints to supervisory and management personnel and to the safety director. Two-and-a-half years prior to the incident complained of, McCurley had passed out due to the TCE fumes and had suffered bruises. That incident was reported to the safety department but no action was taken.

Several weeks before the current incident, McCurley learned of a television program dealing with TCE and its hazards, and as a result he requested from his supervisor information on TCE and precautions which could be taken to avoid exposure. He was told that the company was tired of hearing about TCE and he did not receive any information until after the fall onto the steam lines.

Whenever an OSHA representative came to inspect or when outside business people came into the mill area, the employees were instructed to shut off all steam and TCE machinery to cut down on the toxic fumes.

During McCurley's employment, the safety director was called to the nail mill at least five or six times while McCurley was personally present, because of the extremely high concentration of TCE fumes. No action was taken to eliminate or decrease the fumes on these occasions. No respirators were furnished except that during McCurley's last two years of employment, a respirator was made available to those going inside of the TCE tanks for cleaning purposes. The only other device available was a paper dust mask which was sometimes available upon request, but it did nothing to control fumes. During his employment, McCurley personally witnessed at least thirteen employees who either passed out, became nauseated, or became so dis-

oriented from the fumes that they had to be taken from the building. At least seven other employees had complained to McCurley or told him of being made sick by the TCE fumes.

Following the filing of the first of the present defendants' motions for summary judgment, McCurley filed a second affidavit. It reiterated the circumstances described in the first affidavit but this time there was no direct linking of the events with the presence of the TCE fumes. Rather, the assertion was made that McCurley did not connect the adverse physical symptoms he and his co-workers suffered with the TCE fumes until after his 1986 injury when he was provided information about the chemical's hazards. McCurley denied that he was aware of the danger of TCE prior to his 1986 injury, although he "was concerned over whether it might have some harmful effects and therefore, was attempting to learn something about it at the time of [his] accident."

" '(W)hether on motion for summary judgment or at trial, it must be decided if the testimony of a party-witness is contradictory. On summary judgment this is a question for the judge to decide. It is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony. . . . (E)ven where testimony is contradictory, if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness. The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge. (Cit.) On the other hand, a careless and untruthful witness may have simply forgotten what was said in the first statement, and tailored his second statement to meet the needs of the occasion without regard to the truth. . . . (S)urely the law will construe this contradiction.' *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986).

"Thus, 'on summary judgment the self-contradictory testimony of a party-witness, if a reasonable explanation is not offered for the contradiction, must be construed against the party-witness. That is, the favorable portions of the contradictory testimony are excluded. This rule of evidence applies even when the party-witness is the respondent rather than the movant in summary judgment. *Prophecy*, [supra].' *Chapman v. Burks*, 183 Ga. App. 103, 106 (2) (357 SE2d 832) (1987)." *Evans v. Richardson*, 189 Ga. App. 751, 752 (2) (377 SE2d 521) (1989).

The specific factual statements in the second affidavit were not inconsistent with the corresponding factual statements in the first affidavit; they were merely vague or equivocal regarding McCurley's knowledge that the genesis of the described problems in the workplace was the TCE fumes. The only portion of the second affidavit which contradicts the earlier affidavit is the concluding summary de-

nial of McCurley's awareness of the TCE hazards prior to his 1986 injury.

Although the trial court's order is silent on its construction of the affidavits, it is apparent that the court, which had the parties' evidence and arguments, found either that no material factual contradiction existed in McCurley's affidavits or that McCurley failed to carry his burden of offering a reasonable explanation for the contradiction. Either conclusion has not been shown on appeal to be clearly erroneous. See *State of Ga. v. Mozley*, 182 Ga. App. 871, 874 (357 SE2d 313) (1987).

Whether viewing McCurley's favorable concluding paragraph in the second affidavit as contradictory to the first affidavit, thereby requiring that it be disregarded, or viewing the two affidavits as not factually inconsistent, the undisputed evidence was that prior to his 1986 injury, McCurley was aware that there were TCE fumes in his workplace, the fumes could and were causing adverse physical symptoms in himself and his co-workers including the loss of consciousness, and that he continued to assume the risk of working in the nail mill with the environmental conditions unchanged. Thus, McCurley was precluded from recovery on his claims and the trial court properly granted judgment in favor of the defendants. Since defendants were not liable for injuries to McCurley, they were not liable as a matter of law to his wife for loss of consortium attributable to those injuries. *Henderson v. Hercules, Inc.*, 253 Ga. 685 (324 SE2d 453) (1985).

2. The ruling in Division 1 renders unnecessary a consideration of the adequacy of any of defendants' warnings about the chemical.

3. Appellants move to strike those portions of appellee Whitaker's brief which address its contentions that it provided adequate warnings about TCE to Atlantic and that the strict liability claim cannot be maintained against it as a distributor. They do so on the basis that the trial court precluded consideration of these additional arguments for granting summary judgment. Division 1 renders the motion moot.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 14, 1989.

*John F. Davis, Jr.*, for appellants.
*Rogers & Hardin, Phillip S. McKinney, Anne E. Williams, Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, Drew, Eckl & Farnham, Samuel P. Pierce, Jr., James F. Cook, Jr., Pat M. Anagnostakis*, for appellees.