### A91A1435. SHOWA DENKO K.K. v. PANGLE et al.
(414 SE2d 658)

Pope, Judge.

Plaintiff Juanita Louise Pangle is a Georgia resident whose health was severely impaired in late 1989 when she contracted eosinophilia myalgia syndrome as a result of ingesting L-tryptophan, an amino acid used as a non-prescription food supplement. She and her husband filed a product liability suit in Catoosa County against the pharmacy from which she purchased the L-tryptophan; Nature's Bounty, Inc., and the Hudson Corporation, the manufacturers which produced and marketed the tablets of L-tryptophan which she consumed; Showa Denko K.K. ("Showa Denko"), the Japanese company which allegedly produced the raw material used by the manufacturers of the tablets; and Showa Denko America, Inc. ("S.D.A."), the New York subsidiary of Showa Denko which marketed and distributed the raw material to American pharmaceutical manufacturers. Showa Denko appeals the denial of its motion to dismiss on the ground that personal jurisdiction is lacking both under the Georgia Long-Arm Statute and pursuant to constitutional requirements of due process.

1. The Georgia Long-Arm Statute requires "that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987). Moreover, the cause of action must "arise from" one of the acts set forth in the statute. OCGA § 9-10-91. Plaintiffs allege Showa Denko is subject to jurisdiction pursuant to either subsection (1) or (3) of the statute which provides: "A court of this state may exercise personal jurisdiction over any non-resident . . . as to a cause of action arising from any of the acts [or] omissions . . . enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; . . . [or] (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . ."

The record reflects that S.D.A. acts as Showa Denko's agent for distributing and marketing L-tryptophan and other products in the United States.[1] Thus, pursuant to the Georgia Long-Arm Statute, if S.D.A. is subject to jurisdiction because of an act it performed on behalf of Showa Denko, then it follows that Showa Denko would also be subject to jurisdiction. (We note that S.D.A. has filed no motion to dismiss.)

The first question is whether Showa Denko is subject to jurisdiction because the cause of action arises out of business it transacts in this state, as set forth in subsection (1) of the Long-Arm Statute. The record shows numerous visits to Georgia by Showa Denko employees to attend trade shows or otherwise to conduct business negotiations during the year before plaintiffs' injuries. It cannot be said, however, that plaintiffs' cause of action arises from any of these contacts with Georgia. Showa Denko operates a highly diversified business and manufactures and sells many different products. Most of the contacts Showa Denko made with Georgia relate to the marketing of its other products. Thus, Showa Denko is not subject to jurisdiction pursuant to subsection (1) of the Long-Arm Statute because of the unrelated business it transacts in the state.

Showa Denko did, however, contract with the University of Georgia to test feed-grade L-tryptophan on laying hens. The record contains no evidence concerning how feed-grade L-tryptophan differs, if at all, from the product produced for human consumption because Showa Denko objected to such interrogatories on the ground they were not related to the issue of jurisdiction. Even if feed-grade L-tryptophan is substantially similar to L-tryptophan produced for human consumption, however, plaintiffs' cause of action does not arise out of the marketing or testing of feed-grade L-tryptophan for animals. Thus, the act of entering into the contract for animal feed research would not confer jurisdiction in this case because plaintiffs' injuries did not arise out of this act.

The second question is whether Showa Denko is subject to jurisdiction because the cause of action arises out of any act described in subsection (3) of the Long-Arm Statute. The record contains no evidence that Showa Denko directly committed any act in Georgia re-

---

[1] Although Showa Denko presented evidence that S.D.A. placed orders with Showa Denko by telephone or facsimile communication to Japan and that the product was shipped to S.D.A. "C.I.F." (that is, with title passing to the buyer when the goods are delivered to the carrier, see Uniform Commercial Code § 2-320), we reject the argument that S.D.A. was merely a customer of Showa Denko and that Showa Denko had no interest in the ultimate destination or use of the product it shipped to its customer. The evidence as a whole shows undisputably that S.D.A. was far more than merely a customer. It was Showa Denko's wholly owned subsidiary and acted as Showa Denko's sole agent for marketing and distributing the product throughout the United States.

lated to L-tryptophan for human consumption. Its agent, S.D.A., however, sold L-tryptophan in bulk form to twenty-three customers in nine states for use in the manufacture of dietary supplements. Although none of the manufacturers is located in Georgia, S.D.A. sold to manufacturer customers in the neighboring states of Florida and South Carolina. The customers included nationally marketed brands such as Nature's Bounty as well as General Nutrition Products, Inc., and Walgreen Laboratories, Inc., which operate retail stores throughout the country. S.D.A. sold approximately $4,000,000 worth of L-tryptophan in the United States during 1989. As a result, L-tryptophan produced by Showa Denko was placed in the stream of commerce in virtually all 50 states. In our opinion, this systematic and purposeful activity establishes that Showa Denko, through its agent S.D.A., "engages in [a] persistent course of conduct, or derives substantial revenue from goods used or consumed . . . in this state." OCGA § 9-10-91 (3). The sale of goods in another state, knowing that they will be resold in Georgia, is a purposeful activity sufficient to establish a "contact" with Georgia. See *Shellenberger v. Tanner*, 138 Ga. App. 399, 412 (227 SE2d 266) (1976) (in which this court held a foreign corporation had "causal responsibility" for the presence of an allegedly defective aircraft in this state because it sold the aircraft in another state to a Georgia corporation knowing it would be resold to a Georgia resident). Thus, pursuant to OCGA § 9-10-91 (3) jurisdiction may be exercised as to plaintiffs' cause of action alleging a tortious injury in this state caused by Showa Denko's alleged negligence in manufacturing the L-tryptophan outside the state.

2. The remaining question is whether such an exercise of jurisdiction is consistent with the requirements of due process. Due process requires that the non-resident defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U. S. 457, 463 [(61 SC 339, 85 LE 278) (1940)]." *International Shoe Co. v. State of Wash.*, 326 U. S. 310, 316 (66 SC 154, 90 LE 95) (1945). According to *International Shoe*, the critical test is not the mere volume of activity in the forum state but "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." Id. at 319. Thus, it is not unfair to require a corporation to respond to a suit in a state from which it derives the benefits and privileges of conducting business. Can it be said that Showa Denko conducts business in this state by introducing into the stream of commerce, particularly in two neighboring states, a product which it knows will be sold in Georgia?

Whether the introduction of a product into the stream of commerce establishes minimum contacts with a state in which the prod-

uct is ultimately sold depends on the foreseeability that the product would be sold there. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U. S. 286, 297 (100 SC 559, 62 LE2d 490) (1980). In *World-Wide Volkswagen*, the United States Supreme Court held that Oklahoma did not have personal jurisdiction over an automobile dealership and a regional automobile distributor, both located in New York, simply because it was foreseeable that the automobile sold to plaintiffs in New York could be transported to Oklahoma and involved in an accident there. The Court went on to state, however: "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Id. at 297-298. Unlike the facts in *World-Wide Volkswagen*, in which the plaintiff unilaterally used defendant's product in the forum State, in the case now before us it is not happenstance that the product was ultimately consumed in Georgia. Instead, plaintiff's purchase and use of defendant's product in Georgia was a result of defendant's deliberate and purposeful nationwide distribution of its product. When, as here, a foreign manufacturer sells its product to a United States distributor knowing that its product will be sold in every state, it should reasonably expect to be haled into court in Georgia for an injury caused in this state by that product. See *Burton v. Subaru of America*, 646 FSupp. 78 (N.D. Ga. 1986). "Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this state." *Jet America v. Gates Learjet Corp.*, 145 Ga. App. 258, 260 (243 SE2d 584) (1978). To permit a foreign manufacturer to insulate itself from foreseeable liability by setting up a separate but wholly-owned subsidiary for conducting its business in the United States would deny the notion of fair play to the consumers of this state.

Showa Denko urges that jurisdiction is precluded in this case by the more recent Supreme Court opinion of *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U. S. 102 (107 SC 1026, 94 LE2d 92) (1987). *Asahi* involved a product liability claim filed in California against a Japanese manufacturer of a component part of an allegedly defective motorcycle tire. The part was sold by the Japanese manufacturer to the Taiwanese manufacturer of the tire tube in Taiwan. The tire tube manufacturer used the component part in its product

which was sold throughout the world, including California. The issue in *Asahi* was whether mere awareness by a foreign manufacturer that the component parts it sold and delivered *outside* the United States would reach the forum State in the stream of commerce provided the necessary minimum contacts between the defendant and the forum State.

In Part II-A of the opinion, in which only four of the nine justices concurred, the Court held: "The 'substantial connection,' [cit.], between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*. [Cits.] The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Id. at 112. The opinion listed the following as examples of additional conduct which may indicate an intent to serve the market in the forum State: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id. The record in this case shows S.D.A.'s contract with Nature's Bounty required S.D.A. to warrant that the product was produced in compliance with the laws of all states and the United States. Thus, Showa Denko, through its agent, agreed to produce the product so that it would be marketable in all states, including Georgia. Even if this is not a sufficient additional act to establish the necessary minimum contacts with Georgia pursuant to rationale set forth in *Asahi*, we still believe due process is satisfied in this case.

The majority of justices did not join the conclusion in the *Asahi* opinion that jurisdiction may be exercised by a state only when some conduct, in addition to placing a product in the stream of commerce, is directed specifically toward the forum State. In Justice Brennan's special concurrence he noted that this requirement is inconsistent with the analysis of the *World-Wide Volkswagen* case. In Justice Brennan's opinion, additional conduct directed at the forum State is unnecessary because "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly

conducts business in the forum State, or engages in additional conduct directed toward that State. Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct." Id. at 117 (Brennan, J., concurring specially).

Just as other courts have done, we conclude the "splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue," (*Irving v. Owens-Corning Fiberglas Corp.*, 864 F2d 383, 386 (5th Cir. 1989)) and we chose to apply the stream of commerce analysis set forth by the United States Supreme Court in *World-Wide Volkswagen* to the facts at hand and find jurisdiction is appropriate in this case because Showa Denko should have reasonably anticipated being haled into court in Georgia. But see *Bond v. Octagon Process, Inc.*, 745 FSupp. 710 (M.D. Ga. 1990). Moreover, unlike *Asahi*, this is not a case in which the defendant's product was sold by one foreign manufacturer to another outside the United States; Showa Denko shipped its product into the United States through its subsidiary S.D.A. which acted as its agent for selling the product to manufacturers throughout the nation. Unlike *Asahi*, this case does not involve a claim for indemnification on a contract made and performed outside the United States; it is a claim made by the injured party directly against the manufacturer of the allegedly defective product. Thus, no foreign forum has any greater interest in the controversy. "[T]he burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, [cit.]; the plaintiffs' interest in obtaining convenient and effective relief, [cit.], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, [cit.]; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, [cit.]." *World-Wide Volkswagen*, 444 U. S. at 292. Certainly, Georgia has an interest in providing an effective means of redress for citizens whose health and welfare have been injured by defective products which our commercial laws permit to be imported into the state. The burden upon the plaintiff to bring a separate action in New York or Japan on her claim against one of the alleged joint tortfeasors in this action would be great. Neither would such an arrangement be the most efficient resolution of the controversy. Even if plaintiff could bring an action against Showa Denko in New York, where it conducts business by importing its product to or through its subsidiary, it would be no less burdensome for a Japanese company to defend a separate action in New York than to defend this action in Georgia where all other issues and the alleged joint tortfeasors may be

joined.[2] Consequently, we affirm the trial court's denial of Showa Denko's motion to dismiss.[3]

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 27, 1991 —
RECONSIDERATION DENIED DECEMBER 11, 1991 —

*Troutman, Sanders, Lockerman & Ashmore, N. Karen Deming, Richard W. Morrell*, for appellant.

*Mitchell, Coppedge, Wester, Bisson & Miller, Warren N. Coppedge, Jr., Joseph T. Leman*, for appellees.

---

[2] We note that defendant pharmacy has filed a cross-claim against both Showa Denko and S.D.A.

[3] Several other jurisdictions in which Showa Denko has been named as a defendant in a case alleging injury after ingesting L-tryptophan have found Showa Denko to be subject to personal jurisdiction. See, e.g., *Chalkey v. Showa Denko K*, No. 90-Z-825 (D. Colo. Nov. 14, 1990) (order denying motion to dismiss); *Walker v. General Nutrition Center, Inc.*, No. 90-118-BLG-RWA (D. Mont. Feb. 15, 1991) (recommendation of magistrate to deny motion to dismiss); *DeMoss v. City Market, Inc.*, No. 90-C-461W (D. Utah March 21, 1990) (order denying motion to dismiss); *Simmons v. Puritan's Pride, Inc.*, No. 90-C-255 (District Court, Sedgwick County, Kansas Nov. 13, 1990) (order denying motion to dismiss).