MURDOCK, Justice
(concurring in the result).
I agree with the majority’s conclusion that this Court should reexamine the issue of in personam jurisdiction. In so doing, I note that thoughtful and scholarly opinions by federal and state courts alike have staked out positions on both sides of the minimum-contacts issue raised in Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
Numerous jurisdictions have chosen to follow the “stream-of-commerce” approach urged by Justice Brennan and three other Justices in Asahi, see 480 U.S. at 116-21, 107 S.Ct. 1026. Federal appellate jurisdictions that have done so, or that at least have refrained from endorsing the alternative “stream-of-commerce-plus” approach urged by Justice O’Connor’s plurality opinion, see Asahi, 480 U.S. at 112, 107 S.Ct. 1026, include the Fifth, Seventh, and Eighth Circuits. See Clune v. Alimak AB, 233 F.3d 538, 542 (8th Cir.2000) (“[P]ersonal jurisdiction may be exercised consonant with due process ‘over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.’ [World-Wide Volkswagen v. Woodson, 444 U.S. 286] at 297-98 [(1980)], 100 S.Ct. 559.”); Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 420 (5th Cir.1993) (“Asahi does not provide clear guidance on the ‘minimum contacts’ prong, and therefore we will continue to follow the stream of commerce analysis in World-Wide Volkswagen.” (emphasis added)); Dehmlow v. Austin Fireworks, 963 F.2d 941, 947 (7th Cir.1992) (“Because the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider that theory to be determinative. We may not depart from Court precedent on the basis of a belief that present Supreme Court Justices would not readily agree with past Court decisions.”). See also Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir.1980).
According to Professor Myrha’s survey, cited in the majority opinion, 985 So.2d at 910 (citing Alison G. Myrha, Fifth Circuit Survey, June 2005-May 2006, Civil Procedure, 39 Tex. Tech L.Rev. 689, 718 n. 120 (2007)), a larger number of jurisdictions have expressed a preference for Justice O’Connor’s stream-of-commerce-plus approach. Even those jurisdictions, however, or at least many of them, have not deemed the “plus” to require as much as this Court’s opinion in Alloy Wheels appears to require when it states that “[e]vi-dence of an intent or purpose to serve ‘the American market,’ ” may not be sufficient to establish that a defendant has purposefully availed itself of the privilege of selling its product in any one state for purposes of minimum-contacts analysis. See Ex parte Alloy Wheels Int’l, Ltd., 882 So.2d 819, 827 (Ala.2003).[1] See, e.g., Tobin v. Astra Pharmaceutical Prods., Inc., 993 F.2d 528 (6th Cir.1993), cert. denied sub nom., Duphar, *913 B.V. v. Tobin, 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); A. Uberti & C. v. Leonardo, 181 Ariz. 565, 892 P.2d 1354 (1995); compare Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir.1993) (referencing the varying views expressed in Asahi and concluding that “we need not determine which standard actually controls this case”) with Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004) (“ ‘the sale of goods in another state, knowing that they will be resold in Georgia, is a purposeful activity sufficient to establish a “contact” with Georgia’ ” (quoting Continental Research Corp. v. Reeves, 204 Ga. App. 120, 124, 419 S.E.2d 48, 52 (1992))). See also Kernan v. Kurz-Hastings, Inc., 175 F.3d 236 (2d Cir.1999) (not included in Myrha’s survey, but echoing the Sixth Circuit Court of Appeals’ explanation in Tobin that “purposeful availment” does not require the singling out of the forum state in some way different than any other state in a national marketing effort); Fogle v. Ramsey Winch Co., 774 F.Supp. 19, 22 (D.D.C.1991); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961) (cited with approval by the United States Supreme in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
I also note that the denial of the petition in this case will allow the parties and the trial court to conduct discovery and to examine what is considered a second prong in the due-process analysis. As the Supreme Court explained in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), general considerations of fundamental fairness can affect the sufficiency of a defendant’s contacts with a forum state. Such considerations can include:
“ ‘the burden on the defendant,’ ‘the forum State’s interest in adjudicating the dispute,’ ‘the plaintiffs interest in obtaining convenient and effective relief,’ ‘the interstate judicial system’s interest in obtaining the most efficient resolution of controversies,’ and the ‘shared interest of the several States in furthering fundamental substantive social policies.’ World-Wide Volkswagen [v. Woodson], 444 U.S. [286], at 292 [ (1980) ]. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required .... ”
471 U.S. at 477-78, 105 S.Ct. 2174. On the other hand, the Burger King Court reasoned, such considerations “may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.” 471 U.S. at 478, 105 S.Ct. 2174 (citing Restatement (Second) of Conflict of Laws §§ 36-37 (1971)). These general considerations of fundamental fairness, rather than a minimum-contacts analysis per se, provided the alternative ground for decision in the view of the O’Connor plurality, as explained in Part II.B of its Asahi opinion, Asahi, 480 U.S. at 113-16, 107 S.Ct. 1026, and that provided the basis for the special concurrences of the other five Justices in that case. See Asahi, 480 U.S. at 116-21, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment, and citing Part II.B. of the O’Connor plurality opinion), and Asahi, 480 U.S. at 121-22, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment, and also citing Part II.B. of the O’Connor plurality opinion).

. I therefore question the majority’s reference to the 19 jurisdictions identified as "stream-of-commerce-plus” jurisdictions in Professor Myrha's survey as also being jurisdictions that "adhere to a test comparable to the test used in Alloy Wheels.” See 985 So.2d at 910.