**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 16, 2021**

# In the Court of Appeals of Georgia

A21A1029. LG CHEM, LTD. v. LEMMERMAN.

BARNES, Presiding Judge.

After Cameron Lemmerman was injured by an exploding lithium-ion battery, he sued several defendants, including LG Chem, Ltd. ("LG Chem"), the foreign corporation that allegedly manufactured the battery. LG Chem moved to dismiss the action for lack of personal jurisdiction, and the trial court denied the motion. Following the grant of its application for interlocutory review, LG Chem appeals from the trial court's order denying its motion to dismiss, contending that the trial court erred in holding that the exercise of specific personal jurisdiction over LG Chem comported with due process. For the reasons discussed more fully below, we affirm.

"A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that defendant can be subjected to the jurisdiction of the court." *Beasley v. Beasley* , 260 Ga. 419, 420 (396 SE2d 222) (1990).

> A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. When examining and deciding jurisdictional issues on a motion to dismiss, a trial court has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43 (b). If the trial court conducts an evidentiary hearing, it may resolve disputed factual issues, and we will show deference to those findings. On the other hand, where, as here, a motion is resolved based solely upon written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard, and we resolve all disputed issues of fact in favor of the party asserting the existence of personal jurisdiction.

(Citation, punctuation, and footnote omitted.) *Intercontinental Svcs. of Del. v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017). See *Beasley*, 260 Ga. at 420. Furthermore, when the motion is decided on written submissions, if the defendant does not present evidence controverting particular allegations of the complaint, those allegations can be relied on by the plaintiff and must be accepted as true by this Court. *Amerireach.com v. Walker*, 290 Ga. 261, 270 (2) (719 SE2d 489) (2011); *Beasley*, 260 Ga. at 420. Guided by these principles, we turn to the record in the present case.

The complaint alleged as follows. Lemmerman, a Georgia resident, was injured by a defective 18650 lithium-ion battery manufactured by LG Chem, a South Korean corporation. Lemmerman's girlfriend purchased the battery at Vape City LLC, a Georgia retailer that sold e-cigarettes, personal vaporizers, e-liquids, batteries, and other vaping accessories. The battery was sold to her for use as a rechargeable power source for an electronic cigarette vaporizer without any instructions, warnings, or information.

Lemmerman's girlfriend regularly used the battery to power her electronic cigarette vaporizer. She ultimately gave the battery to Lemmerman. Thereafter, while at his girlfriend's Georgia residence, Lemmerman placed the battery in his pocket. As

3

he did so, the battery exploded. Because of the explosion, Lemmerman suffered permanent injuries and disfigurement to his legs, scrotum, and right hand.

Lemmerman commenced the present suit in the State Court of Cobb County, alleging products liability claims against LG Chem based on theories of strict liability and negligence.[1] Among other things, the complaint alleged that LG Chem engaged in activity that subjected it to personal jurisdiction in the state court under subsections (1) and (3) of Georgia's Long Arm Statute, OCGA § 9-10-91 (the "Long Arm Statute").[2] The complaint included several factual allegations pertaining to personal

---

[1] Lemmerman also sued two other defendants, Vape City, a Georgia limited liability company, and LG Chem America, Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia. Vape City and LG Chem America did not contest personal jurisdiction.

[2] The Long Arm Statute provides in pertinent part:
A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
(1) Transacts any business within this state; [or]
. . . .
(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

jurisdiction, including that LG Chem was engaged in regular, continuous, and systematic business in Georgia; transacted substantial business in Georgia; solicited business in Georgia; targeted marketing specific to Georgia; had a regular plan for the distribution of its products in Georgia; and derived millions of dollars a year from sales of its products in Georgia. The complaint further alleged that LG Chem's 18650 lithium-ion batteries were used in various applications, and that LG Chem advertised, marketed, sold, distributed, and placed its 18650 lithium-ion batteries (including the battery at issue in this case) into the stream of commerce in Georgia through the use of wholesalers, distributors, and retailers "with reasonable expectation that [its products] would be used in this state and which [were] in fact used in this [S]tate."

LG Chem filed a motion to dismiss by way of special appearance in which it sought dismissal of the complaint for lack of personal jurisdiction under OCGA § 9-11-12 (b) (2). According to LG Chem, specific jurisdiction could not be exercised over it consistent with due process.[3] In support of its position, LG Chem submitted

OCGA § 9-10-91 (1), (3).

[3] There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U. S. __, __ (II) (A) (141 SCt 1017, 209 LE2d 225) (2021). It is undisputed that general jurisdiction could not be exercised over LG Chem in this case.

the affidavit of Sooha Yang, the leader of its Global Litigation Team. She averred that LG Chem was a foreign corporation with its headquarters and principal place of business in Seoul, South Korea. According to Yang, LG Chem was not registered to do business in Georgia, did not have a registered agent for service of process in Georgia, did not own or lease any real property in Georgia, and did not have any offices or employees in Georgia. Yang further averred that LG Chem manufactured 18650 lithium-ion batteries only "for use in specific applications by sophisticated companies"; did not design or manufacture 18650 lithium-ion batteries for sale to consumers as "standalone batteries"; did not conduct any business with Vape City, direct or control its actions, or authorize it to sell or distribute lithium-ion batteries for any purpose, including "for use by individual consumers as standalone, removable, rechargeable batteries in electronic cigarette or vaping devices"; and "never authorized any distributor, wholesaler, retailer, or re-seller to advertise, sell or distribute any lithium-ion [batteries] for use by individual consumers as standalone, removable, rechargeable batteries in electronic cigarette or vaping devices."

Lemmerman opposed the motion to dismiss, contending that specific jurisdiction could be exercised over LG Chem consistent with due process.

6

Lemmerman relied on the allegations in his complaint regarding LG Chem's placement of millions of its 18650 lithium-ion batteries into the stream of commerce and its substantial business in Georgia. Additionally, among other exhibits, Lemmerman submitted evidence of LG Chem's website reflecting that its lithium-ion batteries were used for a variety of consumer devices such as smartphones and laptops.[4]

Based on the parties' written submissions,[5] the trial court denied LG Chem's motion to dismiss, concluding that the exercise of personal jurisdiction over LG Chem was proper under both the Long Arm Statute and principles of due process. Citing *Showa Denko K. K. v. Pangle*, 202 Ga. App. 245 (414 SE2d 658) (1991), the trial court determined that it had specific jurisdiction over LG Chem in light of LG Chem's "substantial contacts with the State of Georgia in connection with the

---

[4] Lemmerman also presented United States customs data from the Port of Savannah, Georgia, which appeared to show shipments of LG Chem's various products, including 18650 lithium-ion batteries, into the United States. The parties dispute the relevance of the customs data to this suit and what can be gleaned from it. However, we need not resolve this dispute because, as made clear in our discussion infra, personal jurisdiction is proper over LG Chem even in the absence of the customs data.

[5] Because neither party requested a hearing on the motion, the trial court decided the matter based solely on their written submissions.

distribution and marketing of [its] product." The trial court subsequently granted LG Chem a certificate of immediate review, and LG Chem then filed an application for interlocutory review, which this Court granted. The present appeal followed.

Personal jurisdiction over a nonresident defendant is proper in Georgia if the defendant commits an act or engages in some activity enumerated in the Long Arm Statute and if the exercise of jurisdiction over the defendant satisfies the requirements of due process. *Lima Delta Co. v. Global Aerospace*, 325 Ga. App. 76, 79 (752 SE2d 135) (2013). LG Chem limits its challenge on appeal to whether personal jurisdiction was proper under principles of due process.

> Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine defendant's contacts with the state, focusing on whether (1) defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice.

(Citations and punctuation omitted.) *Beasley*, 260 Ga. at 421. Courts address the first two factors "to determine whether [the] defendant has established the minimum contacts necessary for the exercise of jurisdiction." Id. If such minimum contacts are

8

established, courts then address the third factor to determine if the assertion of jurisdiction is reasonable. Id. Consideration of these three factors helps to "ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of random, fortuitous or attenuated contacts." (Citation and punctuation omitted.) Id. With this legal framework in mind, we address the three due process factors each in turn.

1. The first due process factor requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Citation and punctuation omitted.) *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286, 289 (656 SE2d 898) (2008). See *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U. S. __, __ (II) (A) (141 SCt 1017, 209 LE2d 225) (2021) ( "The defendant, we have said, must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State.") (citation and punctuation omitted). "Purposeful availment" exists in the circumstance where a nonresident "purposefully directs [its] activities towards forum residents." (Punctuation omitted.) *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 473 (II) (A) (105 SCt 2174, 85 LE2d 528) (1985). And in addressing this requirement in the context of products liability suits brought against nonresident manufacturers, this

9

Court in several cases has applied the "stream of commerce" analysis articulated by the United States Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298 (III) (100 SCt 559, 62 LE2d 490) (1980). See *Showa Denko K. K.*, 202 Ga. App. at 247-248 (2). See also *Vibratech v. Frost*, 291 Ga. App. 133, 137-138 (1) (a) (661 SE2d 185) (2008), disapproved in part on other grounds by *Bowen v. Savoy*, 308 Ga. 204, 209, n. 7 (839 SE2d 546) (2020); *Continental Research Corp. v. Reeves*, 204 Ga. App. 120, 124-125 (1) (419 SE2d 48) (1992), superceded in part by statute on other grounds as stated in *Johns v. Suzuki Motor of America*, 310 Ga. 159, 163-164 (3) (850 SE2d 59) (2020). Cf. *Intercontinental Svcs. of Delaware*, 343 Ga. App. at 572 (1) (distinguishing between stream of commerce analysis employed in cases involving "manufacturers and sellers of a physical product" and the analysis employed in cases involving "persons or entities that provide a site-specific service").

Under the stream of commerce analysis employed in *World-Wide Volkswagen* for determining whether there was purposeful availment by a manufacturer,

> [i]f the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due

10

Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Vibratech*, 291 Ga. App. at 138 (1) (a), quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297-298 (III). "Whether the introduction of a product into the stream of commerce establishes minimum contacts with a state in which the product is ultimately sold depends on the foreseeability that the product would be sold there." *Showa Denko K. K.*, 202 Ga. App. at 247-248 (2). But, as explained in *World-Wide Volkswagen*, "[t]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Showa Denko K. K.*, 202 Ga. App. at 248 (2), quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (III).

Applying these principles, we conclude that LG Chem purposefully availed itself of the privilege of conducting activities in Georgia. As previously noted, in the context of a motion to dismiss for lack of personal jurisdiction based on written submissions, uncontroverted allegations of the complaint are accepted as true and any factual disputes are resolved in favor of the plaintiff. See *Amerireach.com*, 290 Ga.

11

at 270 (2); *Beasley*, 260 Ga. at 420. And, here, LG Chem did not present any evidence controverting the allegations in Lemmerman's complaint that LG Chem engaged in regular, continuous, systematic, and substantial business in Georgia; solicited business in Georgia and targeted marketing specific to Georgia; had a regular plan to distribute its products in Georgia; derived millions of dollars a year from the sale of its products in Georgia; and distributed and placed its 18650 lithium-ion batteries into the stream of commerce in Georgia. Moreover, while LG Chem (through Yang's affidavit) disputed that its 18650 lithium-ion batteries were authorized for sale to consumers for use as standalone batteries or in electronic vaping devices, LG Chem did not more generally contest that its batteries were purchased and used in Georgia for other "applications"[6] or purposes.

Taken together, the uncontroverted allegations of Lemmerman's complaint reflect that LG Chem deliberately placed its 18650 lithium-ion batteries into the stream of commerce with the expectation that they would be purchased and used in

---

[6] Yang acknowledged in her affidavit that LG Chem's 18650 lithium-ion batteries are used in various "special applications." As an example, LG Chem states in its appellate brief that its 18650 lithium-ion batteries are used "in specific applications such as power tools." Evidence of LG Chem's website introduced by Lemmerman further reflected that LG Chem's lithium-ion batteries are used in electronic devices such as smartphones and laptops.

Georgia, such that LG Chem "should reasonably expect to be haled into court in Georgia for an injury caused in this state by that product." *Showa Denko K. K.*, 202 Ga. App. at 248 (2). See id. (purposeful availment shown in light of foreign manufacturer's shipment of its amino acids to several out-of-state United States manufacturers for inclusion in their nutritional supplements, where the supplements were then distributed on a nationwide basis, including to Georgia; court noted that where "a foreign manufacturer sells its product to a United States distributor knowing that its product will be sold in every state, it should reasonably expect to be haled into court in Georgia for an injury caused in this state by that product"); *Vibratech*, 291 Ga. App. at 138 (1) (a) (purposeful availment shown where out-of-state manufacturer of airplane engine dampers shipped its dampers to another manufacturer for installation in airplane engines with the expectation that the engines would be sold in locales across the country, including in Georgia); *Univ. of Iowa Press v. Urrea*, 211 Ga. App. 564, 565 (1) (440 SE2d 203) (1993) (purposeful availment shown where university press sold hundreds of copies of book in question in Georgia and "clearly placed [the book] directly into the stream of commerce in Georgia"); *Continental Research Corp.*, 204 Ga. App. at 125 (1) (purposeful availment shown where out-of-state manufacturer of chemical air conditioner cleaner engaged in the

13

"deliberate and purposeful nationwide distribution" of its product through wholesale distributors and "express[ly] target[ed]" Georgia for the distribution and sale of its product). It follows that LG Chem "purposefully established minimum contacts within [Georgia]" under the first factor of the due process analysis. *Burger King Corp.*, 471 U. S. at 476 (II) (A).

In so ruling, we are mindful that after *World-Wide Volkswagen*, the United States Supreme Court returned to the question of what minimum contacts are necessary to satisfy due process in the context of products placed in the stream of commerce in *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (107 SCt 1026, 94 LE2d 92) (1987), but the case did not result in a majority opinion. In her plurality opinion, Justice O'Connor assessed the Court's stream of commerce analysis and concluded that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." 480 U.S. at 112 (II) (A). Justice O'Connor listed examples of additional conduct that might indicate a purpose to serve the market in the forum State: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the

14

sales agent in the forum State." Id. The analysis adopted in the plurality opinion authored by Justice O'Connor is often referred to as the "stream of commerce plus" analysis. See generally *Vermeulen v. Renault, U.S.A.*, 985 F2d 1534, 1548 (III) (C) (3) (b) (11th Cir. 1993). In contrast, in his concurring opinion in *Asahi*, Justice Brennan embraced the stream of commerce analysis articulated in *World-Wide Volkswagen* and concluded that "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" without "requir[ing] a showing of additional conduct." *Asahi Metal Indus. Co.,* 480 U.S. at 117 (Brennan, J., concurring).

Whether Georgia courts should adhere to the stream of commerce analysis of *World-Wide Volkswagen* or adopt the "stream of commerce plus" analysis appears unsettled.[7] See generally *Marks v. United States*, 430 U.S. 188, 193 (II) (97 SCt 990,

---

[7] The Supreme Court of Georgia has cited to Justice O'Connor's plurality opinion in *Asahi* for the general principle that the "due process clause of the Fourteenth Amendment constrains states' exercise of personal jurisdiction over nonresidents" but has not more specifically addressed whether Georgia courts should adopt the "stream of commerce plus" analysis. See *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames*, 279 Ga. 672, 675-676 (620 SE2d 352) (2005). Nor can a definitive answer be gleaned from the decisions of this Court. Compare *Intercontinental Svcs. of Del.*, 343 Ga. App. at 574 (1) (citing plurality opinion in *Asahi* in addressing what activities "create[ ] the substantial connection with Georgia that is required before the exercise of personal jurisdiction by Georgia courts is proper"), *Mitsubishi Motors Corp. v. Colemon*, 290 Ga. App. 86, 88 (1), n. 7 (658

15

51 LE2d 260) (1977) ("When a fragmented [United States Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (citation and punctuation omitted); *State v. Abbott*, 303 Ga. 297, 302-304 (3) (812 SE2d 225) (2018) (applying *Marks*). Nevertheless, the purposeful availment requirement is satisfied in this case even under the more stringent "stream of commerce plus" analysis, given the uncontroverted factual allegations in Lemmerman's complaint that LG Chem "target[ed] marketing specific to Georgia" and had "a regular plan for the distribution of its products in Georgia with the goal of achieving a commercial benefit from the sale [of] products in Georgia." See *Asahi Metal Indus. Co.*, 480 U.S. at 112 (II) (A).[8]

---

SE2d 843) (2008) (citing plurality opinion in *Asahi* in addressing whether defendant purposefully availed itself of transacting business in Georgia), and *Sky Shots Aerial Photography v. Franks*, 250 Ga. App. 411, 412 (551 SE2d 805) (2001) (citing plurality opinion in *Asahi* in addressing minimum contacts), with *Continental Research Corp.*, 204 Ga. App. at 124 (1) (concluding that stream of commerce analysis articulated in *World-Wide Volkswagen* should continue to be applied after *Asahi*), and *Showa Denko K. K.*, 202 Ga. App. at 250 (2) ("conclud[ing] [that] the splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue, and . . . [thus choosing] to apply the stream of commerce analysis set forth by the United States Supreme Court in *World-Wide Volkswagen* to the facts at hand").

[8] The United States Supreme Court again addressed what constitutes the appropriate stream of commerce analysis in *J. McIntyre Machinery v. Nicastro*, 564

LG Chem, however, argues that it did not purposefully avail itself of the Georgia market because the 18650 lithium-ion battery that injured Lemmerman was not purchased through an authorized distribution channel for LG Chem's products in Georgia, but rather was purchased from an unauthorized retailer (Vape City) for an unauthorized purpose (use as a standalone, rechargeable battery in an electronic vaping device). LG Chem contends that "[w]here, as here, the product that injured the plaintiff reaches the forum State through unplanned and unauthorized backchannels, the product manufacturer cannot be said to have *purposefully* made contact with the forum State." (Emphasis in original.)

It is true that the unilateral activity of the plaintiff or a third party cannot, *without more*, "satisfy the requirement of contact with the forum State" because it is the activities of the nonresident defendant that must create the "substantial connection with the forum State." (Citations and punctuation omitted.) *Burger King Corp.*, 471 U. S. at 474-475 (II) (A). See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 873 (131 SCt 2780, 180 LE2d 765) (2011), but that case also did not result in a majority opinion. In his plurality opinion, Justice Kennedy embraced the "stream of commerce plus" analysis. See id. at 883-885 (II). In contrast, Justice Breyer in his concurrence concluded that "on the record present here, resolving this case requires no more than adhering to our precedents," and that he "would not go further" because the case was "an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules." Id. at 890 (Breyer, J., concurring).

U.S. 408, 417 (II) (104 SCt 1868, 80 LE2d 404 )(1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). But where the nonresident defendant "deliberately reached out beyond its home . . . by . . . exploiting a market in the forum State," the defendant can be said to have purposefully availed itself of the privilege of conducting activities within that State. (Citation and punctuation omitted.) *Ford Motor Co.*, 141 SCt at 1025 (II) (A). And that is the situation here, in light of the uncontroverted factual allegations previously discussed that reflect that LG Chem "does substantial business" in Georgia and "seeks to serve the market for [lithium-ion batteries]" in Georgia. Id. at 1026 (II) (B). Given such uncontroverted allegations, LG Chem's contacts with Georgia cannot "be characterized as random, isolated, or fortuitous," *Keeton v. Hustler Magazine*, 465 U.S. 770, 774, (104 SCt 1473, 79 LE2d 790) (1984), but rather reflect deliberate, significant activity directed at Georgia sufficient to satisfy the purposeful availment requirement. *Ford Motor Co.*, 141 SCt at 1025 (II) (A).

2. The second due process factor requires that "the plaintiff's claim . . . arise out of or relate to the defendant's forum conduct." (Citation and punctuation omitted.)

18

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco County*, __ U. S. __, __ (II) (A) (137 SCt 1773, 198 LE2d 395) (2017). See *Sol Melia, SA v. Brown*, 301 Ga. App. 760, 764 (1) (688 SE2d 675) (2009) (second due process factor is not satisfied if plaintiff's claims "do not arise out of and are not related to [the defendant's] alleged contacts with Georgia"). On appeal, LG Chem contends that Lemmerman's claims do not arise out of and are unrelated to LG Chem's purposeful contact with Georgia because he was injured by a 18650 lithium-ion battery that was purchased from an unauthorized retailer outside of LG Chem's approved distribution channel and for unauthorized use as a standalone, rechargeable battery in an electronic vaping device. We are unpersuaded by LG Chem's argument in light of the United States Supreme Court's recent decision in *Ford Motor Co.*, 141 SCt 1017, which further clarified the circumstances under which a plaintiff's claims can be said to "arise out of or relate to" a defendant's contacts with the forum state for purposes of specific jurisdiction.

In *Ford Motor Co.*, two plaintiffs were injured as a result of alleged defects in their Ford cars. 141 SCt at 1023 (I). One products liability suit was brought against Ford in Montana, and the other suit was brought against Ford in Minnesota. Id. In each suit, a state court held that it had specific jurisdiction over Ford stemming from

19

the car accident. Id. at 1022. Each accident happened in the respective forum state where the suit was brought and involved a plaintiff who was a resident of that state. Id. Although Ford did substantial business in both Montana and Minnesota and advertised, sold, and serviced in those states the model of car that the suits claimed was defective, Ford contended that specific jurisdiction was improper because the particular car involved in each crash was not designed, manufactured, or first sold in the forum state. Id. According to Ford, specific jurisdiction would be proper only if there was a causal link between the particular vehicle involved in the accident and Ford's activities in that state. Id. at 1023 (I), 1026 (II) (B).

The Supreme Court rejected Ford's argument. *Ford Motor Co.*, 141 SCt at 1026 (II) (B). The Court concluded that "Ford's causation-only approach finds no support in this Court's requirement of a connection between a plaintiff's suit and a defendant's activities"; that "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do"; and that "we have never framed the specific jurisdiction inquiry as always requiring proof of causation – i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." (Citations and punctuation omitted.) Id. The Supreme Court explained that the "common formulation of the [second due process

20

factor] demands that the suit arise out of *or relate to* the defendant's contacts with the forum," and that while "[t]he first half of that standard asks about causation[,] . . . the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." (Citations and punctuation omitted; emphasis in original.) Id. The Court emphasized that its formulation of the test "does not mean anything goes," id., but that where a product manufacturer "serves a market for a product in the forum State and the product malfunctions there," specific jurisdiction exists over the manufacturer. Id. at 1027 (II) (B).

Here, it bears repeating that Lemmerman is a resident of Georgia, used LG Chem's allegedly defective battery in Georgia, and suffered injuries when that battery allegedly malfunctioned in Georgia. And, as previously explained, Lemmerman's uncontroverted factual allegations are that LG Chem advertised, marketed, distributed, and placed its 18650 lithium-ion batteries into the Georgia market and did substantial business here. Accordingly, based on the Supreme Court's guidance provided in *Ford Motor Co.*, we conclude that Lemmerman's claims and LG Chem's activities in Georgia are sufficiently related so as to be "close enough to support specific jurisdiction." 141 SCt at 1032.

In so ruling, we note that the question whether there was an unforeseeable misuse of the product by the injured plaintiff goes to the substantive merits of a products liability action and can be addressed in that context. See *Woods v. A. R. E. Accessories*, 345 Ga. App. 887, 891 (815 SE2d 205) (2018). In this regard, we have explained that "a product manufacturer has no duty to design or warn against harm caused by an unforeseeable misuse of its product, and a product that causes harm as a result of unforeseeable misuse is not defective." Id. But the question whether the manufacturer owes a legal duty to the plaintiff is a separate question from whether the plaintiff's product liability claim arises out of or relates to the manufacturer's forum conduct for purposes of due process. See *Ford Motor Co.*, 141 SCt at 1026 (II) (B) (drawing distinction between the second due process factor for assessing personal jurisdiction and tort concepts such as but-for causation).

3. The third and final due process factor asks whether Georgia's exercise of specific jurisdiction over a defendant "comports with traditional notions of fairness and substantial justice." (Citation and punctuation omitted.) *Lima Delta Co.*, 325 Ga. App. at 82 (3). In addressing that question, we

> evaluate those factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest

22

in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies.

(Citations and punctuation omitted.) Id.

The aforementioned factors weigh in favor of concluding that specific jurisdiction exists in this case. Where, as here, the allegedly defective product was used in Georgia, the accident allegedly caused by the product occurred in Georgia, and the injured plaintiff was a Georgia resident, Georgia has a compelling interest in providing a means of redress through its state court system. See *Vibratech*, 291 Ga. App. at 140 (1) (a). See also *Showa Denko K. K.*, 202 Ga. App. at 250 (2) ("Certainly, Georgia has an interest in providing an effective means of redress for citizens whose health and welfare has been injured by defective products which our commercial laws permit to be imported into the State."). Moreover, LG Chem has "identified no logistical or financial difficulties in defending a case in Georgia that would unduly burden [it]." *Lima Delta Co.*, 325 Ga. App. at 82 (3). In contrast, "[t]he burden upon [Lemmerman] to bring a separate action in [South Korea] on [his] claim against one of the alleged . . . tortfeasors in this action would be great," and "[n]either would such an arrangement be the most efficient resolution of the controversy." *Showa Denko K.*

23

*K.*, 202 Ga. App. at 250 (2). See *Vibratech*, 291 Ga. App. at 140 (1) (a). "Thus, judicial economy and efficiency are served by extending jurisdiction over [LG Chem] in this case." *Vibratech*, 291 Ga. App. at 140 (1) (a). See *Showa Denko K. K.*, 202 Ga. App. at 250 (2).

For the foregoing reasons, LG Chem failed to carry its burden of proving the absence of specific personal jurisdiction in the present litigation. Accordingly, the trial court committed no error in denying LG Chem's motion to dismiss.

*Judgment affirmed. Markle, J., concurs. Gobeil, J., concurs specially.*

A21A1029. LG CHEM, LTD. v. LEMMERMAN.

GOBEIL, Judge, concurring specially.

Construing the record most favorably to Plaintiff Cameron Lemmerman, as we must on a motion to dismiss, I agree that the trial court did not err in denying Defendant LG Chem, Ltd.'s ("LG Chem's") motion to dismiss for lack of personal jurisdiction based on the limited record before us. For this reason, I concur with the majority's affirmance of the trial court's order.

As an initial matter, and as the Majority mentions, there is a clear distinction between a non-resident defendant's contacts with the forum state for purposes of determining personal jurisdiction and those for assessing product liability. In this

2

appeal, the underlying issue is not whether there is a sufficient causal relationship between LG Chem's contacts with the forum state and Lemmerman's injury for product liability purposes (and we express no opinion on the same). Rather, the issue is whether LG Chem's contacts with Georgia were sufficient to find Lemmerman's cause of action (related to injuries he sustained from an exploding 18650 lithium-ion battery) arose from them for personal jurisdiction and due process purposes.

In part, LG Chem contends that its conduct in Georgia must have given rise to Lemmerman's claims such that the needed link must be causal in nature. Essentially, LG Chem argues that Lemmerman failed to establish the required link because the 18650 lithium-ion battery that injured him was not purchased through an authorized distribution channel for LG Chem's products in Georgia, but rather was purchased from an unauthorized retailer (Vape City) for an unauthorized purpose (use as a standalone, rechargeable battery in an electronic vaping device). As the United States Supreme Court recently clarified, however, "[n]one of [its] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, __ U. S. __, __, (II) (B) (141 SCt 1017, 209 LE2d 225) (2021). Rather,

[the Court's] most common formulation of the rule demands that the suit "arise out of or relate to the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation — i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

Id. at __ (II) (B) (citations, punctuation, and emphasis omitted). Although the majority in *Ford* disavowed any need for a causal link between the defendant's forum activities and the plaintiff's injuries, it essentially went on to illustrate that such a link was present in that case, or at least that there was a sufficient nexus between the claim and the defendant's contacts with the forum state. Id. at __ (II) (B). As noted in Justice Gorsuch's concurrence in *Ford*, the majority indicated "that the Montana and Minnesota plaintiffs before us 'might' have purchased their cars because of Ford's activities in their home States. They 'may' have relied on Ford's local advertising. And they 'may' have depended on Ford's promise to furnish in-state servicers and dealers." Id. at __ (Gorsuch, J., concurring). If this holds true, "that would be more than enough to establish a but-for causal link between Ford's in-state activities and

4

the plaintiffs' decisions to purchase their allegedly defective vehicles." Id. at \_\_ (Gorsuch, J., concurring).[1]

Admittedly, the facts of *Ford* are distinguishable from those evident in this case. In *Ford*, the Supreme Court found that Ford cultivated and systematically served a market for its vehicles in the forum state, including the model that allegedly malfunctioned. \_\_ U. S. at \_\_ (II) (B). Specifically, the Court noted that Ford advertises and markets its vehicles and "works hard to foster ongoing connections to its cars' owners." Id. at \_\_ (II) (B). Here, the facts supporting market cultivation are less clear.

That said, when comparing what each party avers, certain contentions remain that preclude dismissal on motion at this stage. As the Majority sets forth, there are several uncontroverted assertions about LG Chem's contacts with Georgia generally. With respect to the specific battery at issue, the evidence is less clear but nonetheless

---

[1] All of this highlights the inherent issues with interpreting the phrase "arise out of or relate to" for purposes of establishing specific jurisdiction. Applying that phrase "according to its terms [is] a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U. S. 316, 335 (117 SCt 832, 136 LE2d 791) (1997) (Scalia, J., concurring). This is particularly the case, as is true here, where a corporation conducts business through online platforms across state lines and international borders.

insufficient to demand dismissal here. For instance, LG Chem did not factually negate all of the allegations in Lemmerman's complaint. Notably, it did not deny that its 18650 lithium-ion batteries are sold in Georgia. Rather, it provided evidence, through the affidavit of the team leader of its Global Litigation Team, that it did not design, manufacture, advertise, distribute, or sell its 18650 lithium-ion batteries *directly* to individual consumers *as standalone batteries*; nor had it ever *authorized* the co-defendants, or any manufacturer, wholesaler, distributor, retailer, or re-seller, to advertise, distribute, or sell these batteries directly to individual consumers as standalone batteries. Further, it denied designing, manufacturing, distributing, advertising, or selling its 18650 lithium-ion batteries for use by individual consumers as *standalone, removable, rechargeable batteries in e-cigarettes or vaping equipment* in Georgia (or elsewhere) and denied *authorizing* any distributor, wholesaler, retailer, or re-seller to do the same.

In short, LG did not deny that it advertised, marketed, sold, distributed, and regularly placed the batteries into the stream of commerce (through wholesalers and distributors to canvas the entire country without restriction) with the expectation and intention that they be sold in Georgia. It also did not deny that it sent these batteries directly to Georgia, or that these batteries indeed were sold in Georgia for use in

6

consumer products. Nor did it deny that it had established channels through which Georgia residents, including individual consumers, could receive assistance with LG products, including the battery at issue.

As the movant, LG Chem bears the burden of proving a lack of jurisdiction. *Intercontinental Svcs. of Delaware, LLC v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017). In light of the foregoing and based upon the limited record before us at this juncture of the case, particularly the uncontroverted allegations in Lemmerman's complaint, I agree that the trial court did not err in denying LG Chem's motion to dismiss.